MARY A. PENDLETON ET AL. V. MRS. S. L. SHAW ET AL.

Decided March 9, 1898.

**1. Probate Sale—Defective Records.**

See probate records, though fragmentary and partly lost, held to support a finding that the person executing certain deeds was administrator of an estate and authorized to execute them by order of the court.

**2. Lost Records—Evidence—Repute Among Lawyers.**

Testimony of the clerk of the county court that the probate records for certain years, which could not be found, were reputed among the lawyers of the county to be missing, was admissible to show loss of such records; as was also the testimony of such clerk that he was informed that they were missing six years before, when elected to the office.

**3. Land Office—Certified Copies.**

Duly certified copies of indorsements upon a certain Land Office copy of a land certificate were admissible in evidence.

**4. Probate Records—Appointment of Administrator.**

Certified copies of papers filed by an administrator and acted on by the court, and of court proceedings recognizing him as administrator, were receivable in support of sale of land of the estate by him, though the record of his appointment was lost.

**5. Administrator—Defective Record—Presumption of Appointment.**

See defective records held sufficient to raise a presumption that one recognized by a court exercising jurisdiction over an estate as its administrator had been regularly appointed.

**6. Probate Records—Ancient Instrument Not Filed.**

A petition for sale of land, old and time worn, acted on by the court, and found in the proper custody, was admissible in support of a probate sale, though bearing no file mark.

**7. Estates—Grant to Heirs of Decedent.**

Land granted by the State to the heirs of a decedent inured to his estate and became assets subject to administration.

**8. Order of Sale—Ancient Instrument Not on Records.**

An order for the sale of land in probate, not found in the court's minutes of regular records, but upon an ancient document signed by the judge, coming from the custody of the clerk, was admissible as evidence of the act of the court in ordering such sale.

**9. Sale in Probate—Description of Land.**

See description of land in probate proceedings held sufficient to pass title by administrator's sale. Rulings in Santa Anna L. S. & L. Co. v. Pendleton, 81 Federal Reporter, 784, on same title, approved.

**10. Administrator's Sale—Approval—Confirmation.**

Approval of the accounts of an administrator showing sale of land, recognizing such sale, is a sufficient confirmation thereof.

**11. Administrator's Sale—Ancient Deed—Presumption.**

It will be presumed, in favor of an ancient administrator's deed, that everything necessary to be done to perfect the sale was properly done, if nothing appears to impeach its fairness.

**12. Sale of Located Certificate—Relocation.**

Where the title to a certificate and to land located thereby was sold at administrator's sale, subsequent mesne conveyances of such land conveyed to the grantees the right to the certificate; and when it was floated, by reason of conflict with other surveys, and relocated, the title to the land secured by the relocation vested in such grantees.

Appeal from Coleman. Tried below before Hon. J. O. Woodward.

*Sims & Snodgrass, R. W. Brown,* and *John W. Davis,* for appellant.

*J. P. Ledbetter* and *Goodwin & Grinnan,* for appellees.

Collard, Associate Justice.—This is an action by appellants, the children and grandchildren of Creed T. Pendleton, for a new trial and to recover certain land described in the petition, parts of the Creed T. Pendleton league and labor of land, situated in Coleman County, against the appellees, Sarah Louisa Shaw, Hiram Albert Shaw, and Olivia E. Shaw, under article 1373, Revised Statutes of 1879.

The petition shows that on the 22d of June, 1893, H. D. Shaw filed suit in the District Court of Coleman County, styled H. D. Shaw v. the Unknown Heirs of Creed T. Pendleton, No. 397, to recover of the unknown heirs of Creed T. Pendleton 1593 5-10 acres of land, situated in Coleman County, being a part of the Creed T. Pendleton survey, and on the 8th day of November, 1894, the plaintiff in said cause recovered judgment divesting title to the land herein sued for out of the unknown heirs of Creed T. Pendleton and investing title in the plaintiff, H. D. Shaw.

The land sued for in suit No. 397 is described as blocks numbers 81, 82, 83, 88, 90, and 91, as per map of the subdivision of the Santa Anna Live Stock and Land Company's land, which map is recorded in volume 27, pages 14 and 15, of Coleman County deed records—the blocks sued for are particularly described—in which suit service was had upon the unknown heirs of Creed T. Pendleton by publication.

The petition further shows, that since the rendition of judgment in cause No. 397, H. D. Shaw has died, leaving surviving him his widow, Sarah Louisa Shaw, and his two children, Olivia E. and Hiram Albert Shaw, the children being minors, having no legal guardians—H. D.

Shaw leaving a will which has been duly probated, appointing the widow his executrix.

Defendants answered by general denial, pleas of not guilty, and statutes of limitation of three, five, and ten years, claim for improvements in good faith, and cross-bill in the nature of trespass to try title against the plaintiffs.

Plaintiffs replied to pleas of limitation, legal disability to sue, and general denial.

The case was tried by the court without a jury, and judgment was rendered February 20, 1897, for defendants for title to all the land in controversy.

*Findings of Fact.*—Creed T. Pendleton came from Virginia to Texas in 1830 or 1833, leaving his Virginia wife and children in that State, who never joned him in Texas. He married in Texas a Miss Goodnoe or Goodnow, his Virginia wife living at the time, and he died in Washington County, Texas, in 1835, his Texas wife surviving him, but leaving no issue by that marriage. The testimony does not show what has become of his Texas wife. She left Texas for Missouri shortly after the death of her husband.

The testimony of O. A. Seward, clerk of the County Court of Washington County, where the estate of Creed T. Pendleton was administered, shows that there were no records of probate proceedings in the county probate court for 1839, 1840, and 1841. Attached to his depositions as Exhibit "A" there is a certified copy of an order, of date January 2, 1838, signed by John P. Coles, judge of probate: "On the petition of S. Marsh, administrator of the estate of C. T. Pendleton, deceased, praying a longer time to settle said succession, the following order was issued: Republic of Texas, Washington County: The within petition is granted, and three months is hereby given the petitioner to finish and finally close the administration under his charge." The same witness attaches to his depositions certified copies of a number of papers not filed, but found among the papers of the estate in the office of the county clerk, relating to the same, as exhibit "B" as follows: An account against C. T. Pendleton with Thomas N. Blakeley for three months board, sworn to the 12th of September, 1835, before S. Marsh, "judge of the Third Disrict. Indorsed by Thomas Blakeys." Another account against C. T. Pendleton for $14.50, with J. B. Chance, for cash, perfume, and linen, which is credited by $30 due Pendleton for schooling, leaving balance due Pendleton of $15.50, sworn to by Chance the 7th day of August, 1837, as a just and true account "of $14.50 against Creed T. Pendleton, deceased." A note of C. T. Pendleton and George King, dated November 29, 1834, to Isaac Thomas, for $26.56, credited with $20 schooling, indorsed "Pendleton note, $20.56." Also an account of "Shubal Marsh, ad. of the estate of Creed T. Pendleton," to one Miles for advertising, $10, indorsed "Received payment, J. W. I. Miles." A receipt to Marsh for $12 in full for writing administrator's sale, and $5 for year's subscription to "Emi-

grant," signed by Miles. Also a sworn account, August 28, 1835, of C. T. Pendleton with S. Seward for tobacco, a razor, boarding, sworn to before S. Marsh, "Judge 3d Instance." Then an account of Seward with C. T. Pendleton for tuition and paper. Then account of "the estate of C. T. Pendleton to Seward, to balance due on notes with credits." Then a medical bill of Creed Pendleton to William P. Smith, Dr., the items dated in June and August, 1835. Sworn to by Smith before James Ball, Jr., Judge of the 2d Instance. Indorsed "Rec'd payment, by the hand of S. Marsh, Esq., Sept. 11, 1837," signed "Wm. P. Smith." There are other accounts for merchandise against deceased sworn to as claims against the estate—one September 9, 1837, due to Shubal Marsh, for $79.73, and another due to one Dr. H. McCreary, items dated in February, March, April, and May, 1835, sworn to September 17, 1835, indorsed "C. T. Pendleton, with McCreary, acc. $45.46, account against the estate of C. T. Pendleton." Also another paper, headed "Inventory of the property of the estate of C. T. Pendleton." The inventory listed various personal chattels of deceased, and in value aggregated $168.37 1-2. It is signed "Ninad Ragsdale, Gilbert Cribbs, Appraisers." Which inventory is sworn to as follows: "The above inventory taken by S. Marsh and the appraisers, Ragsdale and Cribbs, made oath before me that the above appraisement is just and true. August 24, 1835. (Signed) S. Marsh, Judge 3d Instance. (Indorsed) Inventory of the estate of C. T. Pendleton."

Then follows sworn account against the estate for making coffin, sworn to September 1, 1835. Then a bill for medical attention by H. H. Cone for $7.75, receipted as paid by Shubal Marsh.

Then the following writing: "Shubal Marsh having taken out letters of administration on the estate of Creed T. Pendleton, deceased, according to law, and having returned an inventory of said estate, he is therefore hereby ordered and directed to make sale of said property, having first duly advertised the same. Given under my hand, this 1st day of September, 1835. (Signed) M. Cummings, Judge."

Then follows account of sale of the property inventoried as above, dated September 26, 1835, indorsed "Sale of property." Then a note of deceased to one Bacon for $10, indorsed "Settled Sept. 1836. Shubal Marsh, Admr."

Then copy of "notice" that Shubal Marsh, as administrator of the succession of Creed T. Pendleton, deceased, has made application to "this court" for final settlement, etc., and to be discharged from the administration. All persons interested are ordered to appear at the December term following, to show cause why his application should not be granted. The notice is dated September 25, 1837, signed by "John P. Coles, Judge of Probate." Indorsed, "Suc. C. T. Pendleton; application of S. Marsh to be dismissed. The within application continued to the next term of this court by order. John P. Coles, Judge of Prob., 27 Nov., 1837."

Then follows an account of "Shubal Marsh, administrator of the estate of Creed Pendleton, to Thos. Sypert, for locating one league and labor

of land in Robertson County," said Pendleton headright, $100 in Texas money, and $50 receipted by Sypert, December 11, 1839. Then follows a receipt of Sypert to Marsh for $35, and also for $5 county surveyor's fees for inspecting the field notes of the survey of the league on waters of Navasota.

Then follows what appears to be an account of the estate with the administrator, of amounts paid out in 1839 in Texas money to pay debts of the estate and expenses amounting to $493, credited by $597.78 received from sale of one league of land in 1839, leaving a balance due the estate of $104.78 in Texas money; which, reduced to good money, is stated to be $17.46. This account is not dated except by the month as "June 29th."

Of date November 26, 1839, is a paper addressed to the Hon. Judge of Probate, signed by "Shubal Marsh, Admr.," stating, that "in compliance with an order of the probate court of Washington County, dated September term, 1839," he proceeded to Franklin, Robertson County, and sold to the highest bidder, W. Y. McFarland, one-half league, the south half, belonging to the estate of C. T. Pendleton, for 27 cents per acre, Texas money. It is indorsed, "Pendleton's Estate, S. Marsh, Admr." "Suc. C. T. Pendleton, dec'd, sale of land of date Sept. 30th, 1839." Marsh, as administrator of the estate, allowed account of W. Y. McFarland to "fee for services rendered the estate in procuring one league and labor of land, his headright, to be paid in notes of the government for $300. This account is marked approved by "Dan I. Toler, Judge of Probate Court," and is indorsed, "Creed T. Pendleton Estate to W. Y. McFarland, acc. $300." Then we find a written petition of Shubal Marsh, administrator of Creed T. Pendleton, showing that he has been unable until lately to obtain a certificate for Pendleton's headright, and he asks for six months further time to have the certificate located and to sell a portion of the land to pay fees on the land, there not being sufficient other property to discharge the same. This petition is dated May 27, 1839, and is approved by "Dan I. Toler, Judge of Probate, W. C." It is indorsed as a paper in the succession of Creed T. Pendleton.

Then follows a petition of "Shubal Marsh, admr.," to the judge of probate in Washington County, June 29, 1840, to sell 640 acres (or as much as will pay all debts due by the estate) out of the north half of the league, to pay debts due by the estate. Then a paper signed by "Dan I. Toler, Judge of Probate," in the form of an order, at June term, 1840, granting the prayer to sell, and directing sale of 640 acres of the land, "or as much as will pay all the debts due by the said estate of said Pendleton, out of the half league remaining, belonging to said estate, being out of the north half league, which was his headright," etc.

Then follows a report of sale, dated at Franklin, August, 1840, by Marsh, the administrator, stating that "by virtue of an order from Hon. Dan I. Toler, judge of probate, of date 24th day of June last, he proceeded to Franklin, Robertson County, and on the first Tuesday in August, within the hours prescribed by law, he offered for sale and did sell to the highest and best bidder, at the courthouse door, one-half league

and labor of land belonging to the estate of Creed T. Pendleton, dec'd., to J. D. Giddings, six cents per acre. Franklin, August 4th, 1840." Indorsed as "Return of the sale of half league and labor of land in the succession of C. T. Pendleton." This paper is marked "Filed in Probate Court Oct. 26th, 1840." The file mark signed by Robert Merritt, clerk.

Prior to the foregoing, at the September term, 1839, of the probate court in Washington County, the administrator Marsh filed a petition to the probate judge, stating that he had fully administered all the estate of C. T. Pendleton that had come into his hands or knowledge, "which will appear by the account by him this day recorded, and by which it will also appear that he as administrator has paid out more money than he has received. That many debts yet remain unpaid against the estate, amounting to the probable sum of $600; that he has obtained from the Board of Land Commissioners of Washington County a certificate for one league and labor of land which he had located on Stubs Creek, a branch of the Navasota in Robertson County, and that this land is the only property belonging to said estate available as assets to pay the debts referred to. He therefore prays an order to sell, upon such terms as the court may direct, such of the league and labor of land as will be sufficient to pay all the debts against the estate and clear the same, that he may make final settlement of the estate."

Then follows a paper which has a great many marks upon it, which is copied in the transcript, page 103, to which we refer, in the form of an order of the court in probate, at the September term, 1839, granting the order of sale as prayed for, directing the clerk of the court to issue to the judge of probate court of Robertson County [an order] to sell for cash at the courthouse door, "one-half of a league of the headright league of the Creed T. Pendleton, located and being on Shules Creek, a branch of the Navasota, in said county of Robertson, after having the same appraised, and giving legal notice of said sale." This paper is not signed by anyone, and it must have been treated as a useless document.

At the same term of the probate court, September term, 1839, as shown by one of the papers copied in exhibit "B," the following order was made: "Upon the petition of Shubal Marsh, administrator of the succession of Creed T. Pendleton, deceased, it is order that Shubal Marsh, administrator of the succession of Creed T. Pendleton, deceased, do sell for cash, at the courthouse door, in the county of Robertson (after having given legal notice of said sale) one-half of a league of land, being half of a league granted to the said deceased as a headright, located and being on Shules Creek, a branch of the Navasota, in the county of Robertson, and make due return to this court of his proceedings. Given under my hand, his 30th day of September, 1839. (Signed) Dan I. Toler, Judge of Probate."

January 2, 1838, there is an application found in the papers of exhibit "B," petition of S. Marsh, administrator of the estate of Creed T. Pendleton, showing that he has been unable to make full settlement of the estate, "on account of the liabilities of the estate exceeding the available

funds, and further shows that the landed interests of the estate have not yet been attended to, and can not until such time as the situation of the county and the lands [laws] upon that subject will allow." He prays for further time for a final settlement of the estate as may be necessary to locate and procure titles for lands due said estate from the government. The petition is signed, "S. Marsh, admr. of estate of Creed T. Pendleton." Then the following:

"*Republic of Texas, Washington Co.*—The within petition is granted, and twelve months is hereby given to the petitioner to finish and finally close the administration under his charge. Given under my hand, this 2d day of January, 1838.

"JOHN P. COLES, Judge of Probate."

We next find in exhibit "B" what purports to be an account of estate of C. T. Pendleton with Shubal Marsh, administrator, which cites vouchers from 1 to 13, charging the estate with various items, amounting to $308.08, credited as follows:

"By amount of sale of property belonging to C. T. Pendleton,
    sold Sept. 26th, 1835 .................................... $143 00
"John Earley's note for two cows and calves ................ 25 00
"Cash on James Coles' note ................................ 15 00
"Asa Hoxey's subscription for one scholar .................. 10 00
"Jo. Newman, subscription for one scholar ................. 10 00
"S. Marsh, subscription for one scholar .................... 10 00
"Mr. Dallas, subscription for one scholar .................. 7 00
"Alfred Gee, subscription for two scholars ................. 20 00
"Jonas Turner, subscription balance due ................... 8 00
"Thos. B. Brown for schooling ............................ 7 50
"Wm. Bridge for schooling ................................ 2 00
"By balance due on settlement from J. B. Chance ........... 15 00

                                                       $272 93
"14. Locating fees pd. Sypert, Texas money ................ $100 00
"15. Surveying and examining field notes .................. 41 00
"16. Government fees, about forty dollars .................. 40 00
"17. Pd. Mr. Miles for advertising ........................ 12 00
"18. W. Y. McFarland, fee ................................ 300 00
"19. J. W. I. Miles, advertising good money, $10 in Texas
    money .. ............................................... 50 00

"In good money ......................................... $108 00
"Expenses attendant on sales, 1st and 2d sales ............. $30 00
"Administrators fees ................................... 40 45
"Judges fee ............................................ 5 11

"Court fees .......................................... 12 00

"Carried down ...................................... 87 56
"Balance .. ........................................ 31 70

                                                   $535 94

"The above account examined and found correct, Washington 23 May,. 1839. Dan I Toler, Judge Probate. Sam Lusk, associate.

"By sale of one-half league of land in Texas money in 1839.....$597 00
"By sale of 1-2 league and labor of land in 1840 sold in good
    money .. ........................................ 119 55
"At six cents in good money ............................ 143 46

"In probate August term, 1840, within acc. current of Shubal Marsh, with estate of Creed T. Pendleton, has been examined and found correct, and a balance due the estate of thirty-one and 87-100 dollars, which he, said Marsh, is ordered to pay over to the heirs of the estate as prescribed by law, and the said Marsh is hereby discharged from the administration.

(Signed)                    Dan I. Toler, Judge of Probate."

All the foregoing in exhibit "B" is certified by the county clerk of Washington County as a true copy so far as he can make them, of all the papers, etc., in the estate of Creed T. Pendleton, deceased, as appears from the original papers "now in my office." "Witness my signature, and the seal of said court, affixed at office, in Brenham, this the 7th day of Nov., 1896.

[Seal]                              " O. A. Seward,
              "Clerk of the County Court of Washington County."

Defendants also offered in evidence the following certificate of clerk:

"*The State of Texas, County of Washington.*—I, Sam Sink, clerk of County Court in and for the county aforesaid, do hereby certify that Shubal Marsh was and is now the administrator of the estate of Creed T. Pendleton, dec'd, and that he is entitled to due faith and credit as. such from the records of my office.

"Given under my hand and the seal of the County Court at office, 8th day of October, 1852.

[L. S.]                    .          "Sam Sink, Clerk, C. C. W. C."

Defendants also read in evidence, separately following instruments in. writing, a petition as follows:

"*Republic of Texas, Washington County.*—Probate Court, September term, 1839:

"To Hon. Dan I. Toler, Judge of Probate, etc.: Your petitioner,. Shubal Marsh, administrator of the estate of Creed T. Pendleton, dec'd, respectfully represents unto your honor that he has fully administered all the estate of the said Creed T. Pendleton, dec'd, which has come to

his hands, or knowledge, which will appear by the account by him this day rendered, and by which it will also appear that he, as administrator, has paid out more money than he has received; he would further show that there are many debts remaining unpaid against said estate, probably amounting to from four to six hundred dollars." The petition shows that the administrator had after much trouble and expense obtained from the board of land commissioners of Washington County a certificate for one league and labor of land, which he had located on Shules Creek, a branch of the Navasota, in Robertson County, which land is the only available assets of the estate, to pay debts referred to. Prayer for order to sell so much of the land as will be sufficient to pay all the debts against the estate, clear the same, and make final settlement of the estate in the court. It is signed "Shubal Marsh, Admr."

Then follows: "In probate, September term, 1839, upon the petition of Shubal Marsh, administrator of the succession of Creed T. Pendleton, dec'd. It [is] ordered that Shubal Marsh, administrator of the succession of Creed T. Pendleton, dec'd, do sell for cash, at the courthouse door, in the county of Robertson (after giving legal notice of sale), one-half of a league of land, being half of the league granted to the said deceased as a headright location, and being on Stubs Creek, a branch of the Navasota, in the county of Robertson, and make due return to this court of his proceedings on this order. Given under my hand, this 30th day of September, 1839. Dan I. Toler, Judge of Probate."

Then: "To the Honorable Judge of Probate: Sir—In compliance with an order of the probate court of Washington County, dated September term, 1839, I proceeded to Franklin, Robertson County, and sold to the highest and best bidder, which was W. Y. McFarland, one-half league of land, it being the south half of a league belonging to the estate of C. T. Pendleton for the sum of twenty-seven cents per acre, Texas money, Nov. 26th, 1839. (Signed) Shubal Marsh, Admr."

Then:

*"Republic of Texas, Washington County.*—To the Honorable Judge of Probate, in said county, June 29th, 1840: Your petitioner, Shubal Marsh, admr. of the estate of Creed T. Pendleton, would represent to your honor that after an examination of the account current of said estate, I find there is one hundred dollars and upwards due from said estate. Therefore, your petitioner prays that your honor would grant an order of sale of 600 acres of land, or as much as will pay all the debts due from said estate, out of the remaining half league belonging to said estate, which is the north half of his headright league and your petitioner ever prays.
(Signed)                              "SHUBAL MARSH, Admr."

"In Probate, June term, 1840. Upon the petition of Shubal Marsh, administrator of Creed T. Pendleton, deceased. It is ordered that Shubal Marsh, administrator of Creed T. Pendleton, deceased, do sell for cash at the courthouse, in the county of Robertson (after giving legal notice

of sale) six hundred acres of land, or as much as will pay all the debts due by the estate of said Pendleton, out of the half league remaining, belonging to said estate, being out of the north half league, which was his headright, and make due return to this court of his proceedings on this order. Given under my hand this 29th day of June, 1840.

(Signed)             "DAN I. TOLER, Judge of Probate."

*"Republic of Texas, Washington County.*—By virtue of the order from the Honorable Dan I. Toler, Judge of Probate, under date of the 29th day of June last, I proceeded by my——, to Franklin, Robertson County, and on the first Tuesday in August, within the hours prescribed by law, I offered for sale and did sell to the highest and best bidder, at the courthouse door, one-half league and labor of land belonging to the estate of Creed T. Pendleton, dec'd, to J. D. Giddings, at six cents per acre.

"Franklin, August 4th, 1840.

(Signed)             "SHUBAL MARSH, Admr."

Extract from acct. current:

"The sale of one-half league of land, in Texas money, in 1839,
$597.78 ........................................$119 55
"By sale one-half league and labor land in 1840, sold at 6 cents,
in good money ....................................$143 46"

"In probate, Aug. Term, 1840. The within acct. current of Shubal Marsh, with the estate of Creed T. Pendleton, has been examined and found correct, and a balance due the estate of thirty one 87-100 dollars, which the said Marsh is ordered to pay over to the heirs of the estate, as prescribed by law, and the said Marsh is hereby discharged from the administration.

(Signed)   "DAN I. TOLER, Judge of Probate."

These instruments offered in evidence by the defendants are certified by the clerk of the County Court of Washington County, as follows:

*The State of Texas, Washington County.*—I, H. M. Lewis, Clerk of the County Court of Washington County, do hereby certify that the foregoing is a true copy from the original papers of the estate of Creed T. Pendleton, dec'd, now on file in said court."

The certificate is attested with the seal of the court, and signature of the clerk, H. M. Lewis, October 12th, 1877.

Defendants also read in evidence the following certificate:

*"Treasury Department, Office of Commissioner of Revenue, Austin, June 14th, 1841.*—This is to certify that S. Marsh has paid the taxes due the Republic of Texas, in full, upon one league and labor of land lying in the county of Robertson.

(Signed)   "E. LAWRENCE, Commissioner of Revenue."

The entire certificate is then properly certified by Andrew J. Baker, Commissioner of the General Land Office of the State, March 25, 1896, as a correct copy of the original, together with the indorsements thereon then on file in his office.

Defendants then read in evidence a Land Office copy of the original field notes on file in the Land Office as returned by the surveyor, approved by the district surveyor of Travis district, of 26,000,000 square varas of land, made for C. T. Pendleton, deceased, by virtue of headright certificate No. 21, issued by the Board of Land Commissioners of Washington County, on the 14th of March, 1839, survey No. 276, in Coleman County, which field notes are signed by two chain carriers, duly certified by Andrew J. Baker, Commissioner of the General Land Office of the State, February 8, 1897.

Also Land Office copy made and certified by the Commissioner, Andrew J. Baker, March 25, 1896, of the following:

"Captain Crosby—You will please deliver the headright certificate of field notes of Creed T. Pendleton for one league and labor issued to me as administrator on said Pendleton's estate. (Signed)    Shubal Marsh, Administrator."

"Sept. 7th, 1852.    2 File 126 Robertson County.    1st Class.    Creed T. Pendleton."

Also Land Office copy of the original certificate issued by the Board of Land Commissioners of Washington County on the 14th day of March, 1839, upon proof by Shubal Marsh, administrator of the estate of Creed T. Pendleton, that Creed T. Pendleton arrived in the Republic in the year 1835, and resided in the county with his family until his death, in the year 1835, and that his heirs were entitled to one league and one labor of land upon the condition of paying three 50-100 for each labor of irrigable land; two 50-100 for each labor arable land, and one 20-100 for each labor of pasture land, which certificate is signed "John P. Coles, Chf. J. W. County, Ex. Off. Prest. B. Land Commissioners, and Sam Lusk, associate." Duly attested by "Robert Merritt, clerk of the County Court, and Ex. Off. Clk. of B. Land Comrs. W. County."

It is indorsed, "No. 21, Shubal Marsh, Admr. Creed T. Pendleton, dec'd. Certificate one league and labor of land. File 126, No. 1, 488 Robertson County, 1st Class, H. R. Certificate, Creed T. Pendleton."

"I.    File 488, Travis, I. Class Creed T. Pendleton.

"21.    Wash 1st. re-location of 126 Rob. 1. Filed June 21st, 1873. R. E. E. Kellum, Chief Clerk."

Defendants also read in evidence the original patent as coming from them, to the heirs of Creed T. Pendleton, for the league and labor situated in Coleman County, embracing the land in controversy, dated January 9, 1874, and recorded in Coleman County April 3, 1878, issued "by virtue of headright cert. No. 21, issued by the Board of Land Commissioners of Washington County March 14th, 1839, for one league and labor of land."

Also deed by Shubal Marsh, as administrator of the estate of Creed T. Pendleton, deceased, to W. Y. McFarland, which recites as follows: "Know all men, that whereas, on the 30th day of September, 1839, the Hon. probate court of said county (Washington) ordered that Shubal Marsh, administrator of the estate of Creed Pendleton, dec'd, should, for the payment of the debts of said estate, at the courthouse door of Robertson County, sell to the highest bidder, for cash, one-half of the league of land to which the said Creed T. Pendleton was entitled as his headright for immigrating to the country before the declaration of independence, which has been located on Stubs Creek, in Robertson County, and the said administrator, having given notice that said half league of land would be sold for cash to the highest bidder at the courthouse door of said Robertson County, in the town of Franklin, on the first Tuesday in December, 1839, by advertisements, posted up at the courthouse door, and three other public places in said Robertson County, and also by publishing the same in the 'Texas Immigrant,' a newspaper published in the town of Washington, in Washington County, it being the adjoining county to Robertson, for thirty days before said day of sale, did proceed, on the said first Tuesday in December, A. D. 1839, to offer at public sale for cash, at the said courthouse door of Robertson County in the town of Franklin, to the highest bidder, all the right, title, claim, interest, and property which the estate of Creed T. Pendleton had in said half league of land, part of the headright of the said Pendleton, and the certificate by which the same was located, being the western part of the said league and labor, the headright of said Pendleton." It proceeds to recite the offer for sale, and the bid of McFarland, twenty-seven cents per acre, the highest and best bid, and the sale to him; then follows the formal conveyance to McFarland for $595.94, paid to the administrator, "the one-half league of land before described, and the certificate of said Creed T. Pendleton which is located on the same," etc. The deed is signed by "Shubal Marsh, admr." (Seal.) It is witnessed by "James R. Perkins" and "Geo. W. Horton," and proved for record by the subscribing witness Horton, at Brenham, the 25th day of September, 1852, before W. Higgins, Chief Justice of Washington County. The deed is filed for record in Coleman County, 2d day of April, 1878, and duly recorded in the deed record on the 3d of April, 1878. On the 10th day of September, 1840, Shubal Marsh, administrator, executed a deed to J. D. Giddings to the remaining half of the league unsold, to pay debts. The deed recites, "that whereas, an order and decree was duly made by the honorable the probate court of said (Washington) county to sell at public auction for cash, at the town of Franklin, in the county of Robertson, at the June term of said court, 1840, one-half of the headright of Creed T. Pendleton, and his labor, which order was made upon the petition of Shubal Marsh, administrator of said estate, for the purpose of paying debts due by said estate," reciting notices of sale, "and whereas I, the said Shubal Marsh, administrator of said estate, did proceed to offer for sale the said one-half

of said headright and the certificate No .—, issued in the said county of Washington, to Shubal Marsh, administrator of the estate of Creed T. Pendleton, on the first Tuesday in August, 1840, at the town of Franklin, in the county of Robertson, in which the said land was situated, being all the remaining portion of said headright, after a sale of one-half league heretofore made by order of said court. The entire remaining part of said league and labor being necessary to be sold to pay the debts and expenses of administration." The recitations proceed to show that the lands were bid in by J. D. Giddings at $155, and he was declared the purchaser.

Then follows the conveyance, in the name of "Shubal Marsh, administrator of the estate of Creed T. Pendleton, for the sum of $155 to him paid." The deed is signed Shubal Marsh. It is witnessed by W. Y. McFarland and James Willie. "Proved for record by the witness Willie, the 28th Sept., 1852, before W. A. Higgins, Chief Justice of Washington County."

The field notes of the land patented to the heirs of Creed T. Pendleton embrace the land in suit. Defendants read in evidence a letter of C. Crosby, Commissioner of the General Land Office, to William Miller, Esq., of Mobile, Ala., of date the 17th of May, 1851, informing the latter "that the headright certificate No. 21, issued by the Board of Land Commissioners of Washington Co. to Creed T. Pendleton, by his administrator Shubal Marsh, is a genuine claim against the govt. of Texas, and can now be located on any of the vacant and unappropriated public domain within the limits of Texas. It having been once located on land previously granted to another does not invalidate the claim."

Defendants also read in evidence deed of J. D. Giddings and W. Y. McFarland to David Ayres, dated September 22, 1852, for express consideration of $1200, conveying all and singular the headright of Creed T. Pendleton, the said certificate being for one league and labor No. 21, described further as having been located upon an eleven-league grant, warranty title only as against themselves. Deed duly acknowledged and recorded in Coleman County, April 5, 1878.

By deed of date March 4, 1854, David Ayres conveyed the same certificate, expressed consideration $700, to James Elder, of Mobile, reciting conveyances by Marsh, administrator, to McFarland and Giddings and their sale to him, Ayres; and that the certificate had been by him withdrawn from the General Land Office by consent of the Commissioner in consequence of the conflict with an eleven-league grant, which deed was duly acknowledged and recorded in Coleman County, Texas.

James Elder of Mobile, Alabama, on the 26th of October, 1854, by deed, conveyed the certificate to David L. Campbell and Henry B. Holcombe, expressed consideration $1500. Said Holcombe and Campbell, December 31, 1855, by deed duly acknowledged and recorded in Coleman County, for expressed consideration of $1600, conveyed the certificate to William Willie.

Defendants read in evidence a quitclaim conveyance and ratification deed of one given before (date not stated), recited to be lost, by Willie and wife, to Purnell L. Hammond, dated July 23, 1874, for one-third undivided interest in the land located by the same certificate No. 21, duly recorded in Coleman County, April 13, 1878.

Also deed dated January 1, 1877, by William Willie to T. T. Tyree, conveying his title to two-thirds undivided interest in the league and labor located by the said certificate, with special warranty against his heirs and assigns, duly recorded in Coleman County, April 13, 1878.

Also general warranty deed, dated January 31, 1882, by S. Ella Hammond, surviving widow of R. L Hammond, to Geo .W. Mahoney, conveying one-third interest in the Pendleton league and labor, duly acknowledged and recorded in Coleman County March 8, 1882.

Also general warranty deed, dated January 26, 1883, by T. T. Tyree and wife, Elvira Tyree, to Geo. W. Mahoney, to an undivided two-thirds interest in the same land.

General warranty deed, dated December 17, 1883, by Geo. W. Mahoney and wife, to Santa Anna Live Stock and Land Company of Coleman County, a private corporation, conveying the league and labor, duly acknowledged and recorded in Coleman County December 26, 1883.

Warranty deeds of the Santa Anna Live Stock and Land Company on March 11, 1893, and the other April 7, 1893, to H. D. Shaw, conveying the land in controversy, part of the league and labor, recorded in Coleman County, March 16, 1893.

It was proved that Mrs. S. Ella Hammond was the widow of P. L. Hammond; that they were married in 1865; never had any children; and that he died in Alabama, in 1875 or 1876. leaving the widow his only heir at law. It was proved that the first probate minute record of the County Court of Washington County is of date in 1837, in Book A, which continues down to January 1, 1839. Then follows Book B, in which the first order is dated the 28th day of February, 1842. There is a skip in the record of minutes from January 1, 1839, to February 28, 1842. There are also books known as final record of the estates, in which probate proceedings are recorded in a desultory way for the years 1835, 1836, 1837, 1838, 1839, 1840, 1841, and 1842, there being no regularity in the dates. There are no probate minutes for the years 1836, 1839, 1840, and 1841. The first order in minute records A is dated January 13, 1837, and the last, December 31, 1838. The first order in Book B, is dated February 28, 1842.

It was proved by O. A. Seward, the county clerk of Washington County for six years past before his testimony was taken, that it was a well known fact, by the attorneys of the bar ·in the county, that the record of probate minutes of the county is missing for the years 1839, 1840, and 1841, and the witness was informed when elected that the records were missing. There are in fact no records for the years stated. There is no tradition that the witness is aware of, except that it is generally known that such records were missing. There is one order in

Book A in the administration of the estate of Creed T. Pendleton, which is certified by him. When public records are designated by letters, it is usual to begin with A, as the first book, and continue on alphabetically. In book B, the first final record is of date January, 1839, and the last marked filed March 3, 1846. In Book C, final record, the first proceeding recorded is dated November 21, 1836, and on page 470 record of proceedings dated November, 1846, and on pages 474 and 475 proceedings dated April, 1837. Witness knows nothing of his own knowledge of any probate proceedings for the years 1837-8-9 and 1840, except as stated above, and if any probate records existed other than what is now found he has never seen them. The copies he makes in Exhibit B are old, ragged, torn, and blotted, and it is nearly impossible to show all the minute marks and blots, though the copies are as nearly correct as he can make them.

D. C. Giddings, who has resided in Brenham, Washington County, forty-four years, and had practiced law there from 1852 to 1873, states, and his statements are true, that J. D. Giddings was his brother, and resided in Brenham from 1840 to 1878, when he died. Knew Shubal Marsh at Independence, in Washington County, from 1852 to 1860; not certain when he died. He does not know what became of the lost records, for the years 1839, 1840, and 1841. "There is a belief," he says, "or was at that time, among the lawyers of the bar that that record had been lost." He has made careful search for such record a number of times in the county clerk's office and in the district clerk's office, and inquiry at different law offices. Does not know of any destruction of any records. Knows only one book could be found. Was searching for dates, and would have been satisfied had he found what he wanted in any one of the books. We conclude, that under the circumstances shown by the testimony the trial judge was warranted in finding that Shubal Marsh was the administrator of the estate of Creed T. Pendleton, deceased, and that as such he was authorized by regular orders of the probate court of Washington County, in which the estate was administered, to execute the two deeds in evidence, one to W. Y. McFarland, for one-half the headright league and labor granted to the heirs of Pendleton, by the location of his certificate in Robertson County, and the deed to the other half of the land so located to J. D. Giddings, which constituted them the owners of the entire league and labor, and the certificate itself when floated, and the mesne conveyances in evidence vested the title to the land in controversy in the defendants.

*Opinion.*—There was no error in admitting the testimony of O. A. Seward, county clerk of Washington County, that "it is a well known fact, by the attorneys of this bar, that the said record is missing for the years 1839, 1840, and 1841, the loss of which has caused considerable trouble to the attorneys here." And the testimony of the same witness, "I was informed about six years ago, when elected, that said records were missing. I do not know of any tradition, except that it is generally

known that said records were missing." There were in fact no such records in the office. They were missing, and the witness could testify to the fact. His knowledge of what was known to the members of the bar was also admissible, as tending to show that such records had existed and were lost. From the nature of the fact to be proved and time inquired about, over fifty-five years ago, the difficulty of establishing it by the testimony of living witnesses is apparent. The best evidence attainable would probably be that of reputation, or what was commonly understood by those who would be most conversant with the subject. It was a matter of public interest, and upon this ground would be admissible, and it would be more valuable and reliable, as coming from persons most interested and who would be expected to have the best information attainable at the time upon the subject. Such a fact could hardly be established at all, unless in the way attempted on the trial of this case. 1 Greenl. Ev., 128.

We do not believe the court erred in permitting the testimony of this same witness to go to the jury, that he was informed when elected, "about six years ago," that these records were missing, and that it was generally known that they were missing. We have seen that it was proper to allow him to state what was generally known concerning the lost records; the time when he became aware of such reputation would also be proper. He became the custodian of the records, and it seems reasonable that he should be permitted to state what he had learned concerning some supposed to be lost at the time he took charge of the office. The fact did exist that the records were not to be found in the office, and many circumstances pointed to the fact that they once existed, and had been lost. The great number of papers found among the papers of the estate in the office relating to the acts of the court under which the estate was being administered, the interval of the three years during which such records were missing, supported by the presumption that such acts would be legally performed by the officers of the court antedating the deeds of the administrator, indicate the fact to be proved, and it is not surprising that there should be a truthful tradition of the fact which the custodian of the records might testify to, as well as to the time when he became aware of it. We also believe there was no error in admitting the testimony of the witness Giddings of the same character.

It was proper to admit the indorsements on the certified Land Office copy of the certificate, by virtue of which the land in controversy was located, which are certified to be correct copies of indorsements on the original certificate.

Both parties, plaintiff and defendant, claim the land located by virtue of the certificate, indicating that it had been located in Robertson County, floated and relocated again. Appellant's assignment does not show upon what grounds they can complain of the indorsements. The body of the certificate shows that it was issued upon the application of

Shubal Marsh, administrator of the estate of Creed T. Pendleton; and without contradiction it is shown by other evidence that it was originally located in Robertson County.

Appellants insist that the court committed error in permitting defendants to read in evidence the certified copy of the application for the sale of land, as found among the papers of the estate of Creed T. Pendleton, in the county clerk's office of Washington County, dated September term, 1839, and addressed to Hon. Dan I. Toler, judge of probate, which petition shows that the applicant has administered the estate which has come into his hands, as appeared by accompanying account, by which it also appears that he has paid out more money than he has received. Also stating that there are many unpaid debts against the estate, probably amounting to four to six hundred dollars; that he had procured the certificate for a league and labor of land, and located it on Stubs Creek, in Robertson County. That the land was the only available assets belonging to the estate, praying for an order to sell so much of the land as would be sufficient to pay all the debts against the estate.

The objections to the petition made were that Marsh was not at the time the administrator of the estate, that no land had been appraised, that the petition does not sufficiently describe the land, because the petition does not show existing debts against the estate. Because it is not a file paper, because the certificate by which the land was located and the land itself belonged to the heirs of Creed T. Pendleton, and was not assets in the hands of the administrator.

We think the facts in evidence show that Marsh was the administrator of the estate. There is in evidence a certificate of the clerk of the court, dated, it is true, in 1852, that he was then and had been the administrator. The court recognized him as administrator, he filed accounts as such, and many other papers, which the court acted on recognizing his authority as such, and after so long a time, with so many sustaining circumstances, it should not be doubted that he was the legally authorized administrator of the estate.

The court had jurisdiction of the matter of administration, it exercised jurisdiction over the estate, as represented by Marsh, the administrator, and it should now, at this late day, upon the evidence adduced, be presumed that he had been regularly appointed. Bartlee v. Cocke, 15 Texas, 478; Poor v. Boyce, 12 Texas, 440.

The petition was among the papers of the estate—old, time-worn papers, in the custody of the clerk; it was acted on by the court, the action indorsed thereon, and by the administrator. It should be received at this time as if it had been marked "filed." Dunn v. State, 6 Texas, 541; Holman v. Chevaillier, 14 Texas, 339; Eggenberger v. Brandenberger, 74 Texas, 274; Lee v. Wharton, 11 Texas, 71; 62 Texas, 92; 63 Texas, 212.

The grant to the heirs of Creed T. Pendleton inured to the estate of deceased, and became assets subject to administration. Lyne v. Sanford, 82 Texas, 58; Hill v. Moore, 85 Texas, 343; Hill v. Kerr, 78 Texas,

218; Rogers v. Kennard, 54 Texas, 34; Soye v. Maverick, 18 Texas, 101; Babb v. Carroll, 21 Texas, 765; Santa Anna Live Stock and Land Co. v. Pendleton, 81 Fed. Rep., 784.

Appellants also insist that the court erred in admitting in evidence the order of the court to sell one-half the league in Robertson County.

We believe it evidences the act of the court, though not found in the minutes upon regular records. The signature of the judge signed to the order, an ancient document, coming from the proper custody, will be presumed to be genuine.

The report of the sale to W. Y. McFarland is the subject of similar objections to those made to the petition by assignment. The description of the land sold is not sufficient. On this question, we fully agree with Judge Pardee in his opinion in the case of Santa Anna Live Stock and Land Company, above cited. Other objections to the report are not well taken, as before seen, in answer to objections to the petition. We believe the petition for sale, dated June 29, 1840, was correctly admitted in evidence. What has been said as to the admissibility of the former petition for sale is applicable to this, and need not be repeated, as was the order of sale signed by the probate judge and the report of sale.

The deeds of the administrator to McFarland and Giddings were admissible in evidence. These deeds are set out in full, with authentications for record and certificates of record, in appellant's brief, pages 42 to 48, inclusive, to which we refer.

If any confirmations of sale were required at the date of the sales, the evidence shows compliance in approving the account of the administrator showing the sale. Ferguson v. Templeton, 32 S. W. Rep., 148, 151; Bartlett v. Cocke, 15 Texas, 471. It is sufficient confirmation if the court recognizes sales. Robertson v. Johnson, 57 Texas, 66; Moody v. Butler, 62 Texas, 212; Neill v. Cody, 26 Texas, 289.

All reasonable presumptions will be indulged, in favor of these ancient deeds, that everything necessary to be done to perfect the sale was properly done, if nothing appears to impeach its fairness. White v. Jones, 67 Texas, 638, 640 and authorities cited; Bartlett v. Cocke, supra.

There was no error in admitting in evidence the mesne conveyances after the administrator's deeds down to defendants. The conveyances vested the title to land originally located by the certificate, and the certificate, in so far as it was the property of the estate, in the vendees of the administrator. When the certificate was floated, it was the property of such vendees and their vendees, and when it was relocated the title to the land acquired thereby vested in them, and it was proper for the court to so find and render judgment.

In conclusion, we will say that we have considered every assignment of error presented in appellants' brief, and find none of them well taken. We refer again to the opinion of Judge Pardee in the case of Santa Anna Live Stock and Land Company v. Pendleton, as declaring the law upon the merits of the title involved in this suit. The law there laid

down is sound, and we adopt the opinion, in so far as it applies to this case.

We find no error in the judgment of the lower court and it is affirmed.

*Affirmed.*

Writ of error refused.