JAMES M. BAKER, ADM'R, v. ELIZABETH COE AND OTHERS.

In this case it was held, that a transcript of proceedings before an Alcalde in 1834, showing that A was recognized at that time as curator of B, and a return of sale of a quarter of a league of land sold by A as curator of B, together with a deed, of corresponding date, from A, as curator of B, to the purchaser, certified by said Alcalde to have been executed before him in accordance with law, of same date, in the absence of any evidence to impeach the verity or good faith thereof, were good and sufficient to vest the title of B in the purchaser.

Where the ancient records of the Probate Courts fail to show that everything was done which the law required, in making sales of property of the estates of deceased persons and minors, but the sale is proved, and there is no evidence to impeach its fairness, the presumption is that the officers of the Court and the representative of the estate did their duty; and this presumption, owing to the uncertain manner in which the records of said Courts have been made and

kept, controls the presumption that the records of Courts show all the proceedings thereof.

Appeal from Gonzales.    Tried below before the Hon. Fielding Jones.

Suit by Arthur Swift (appellant's intestate) against Elizabeth Coe and others to recover a quarter of a league of land, commenced Sept. 17th, 1853.    The land was originally granted to William A. Sowell, who was a son of John and Rebecca Sowell. William A. Sowell died about July, 1834, at Gonzales, leaving him surviving, an infant daughter Rachel.    The plaintiff claimed the whole quarter of a league by conveyance from said heir of William A. Sowell.    The defendants claimed by conveyances from the widow and heirs, (except the said Rachel,) of John Sowell, who claimed by purchase at curator's sale.    The only question made in this Court, was as to the validity of the curator's sale; the facts in relation to which were as follows:—

Defendants read certified copy of proceedings before Ezekiel Williams, Alcalde, in 1834, in the estate of W. A. Sowell, 1834; Department of the Brazos; Jurisdiction of Gonzales.    "Lewis D. Sowell having been appointed curator of the estate of William A. Sowell, dec'd, by the Judge of the 1st Inst. of the aforesaid municipality; and after he, the said L. D. Sowell, having given bond and security for the faithful performance of the same by the directions given by the aforesaid Judge.    A letter of curatorship then having been granted to the said L. D. Sowell, and directed to make a true inventory of the effects by two responsible men under oath and return the same to this office.

" A list of appraisement taken and rendered to this office now on file, am't $114 12½.

" Having date 31st Oct. 1834.

"Nov. 15th.    List of sale rendered and on file in this office. Am't $140 25."

Here followed an appraisement directed to two appraisers, dated Oct. 16th, 1834.    Then followed list of property, consisting of the quarter of a league of land now in controversy, (appraised at $80,) household furniture, clothing, &c., amounting in all to $114 12½.    Then followed schedule of the sale of said property, dated Nov. 15th, 1834, including the quarter of a league of land; this latter sold to John Sowell for $97 00; all amounting to $140 25.

The above was certified by the Clerk of the County Court of

.Baker v. Coe.

Gonzales county, Oct. 24th, 1854, to be "a true copy of proceedings had pertaining to the administration of the estate of William A. Sowell, deceased, now on file in my office."

Defendants then read in evidence a deed from L. D. Sowell, curator, to John Sowell, as follows:—

Sello Tercero      [SEAL]      Para el Bienio de
Dos Reales                    1834 y 1835.

STATE OF COAHUILA AND TEXAS,
*Department of the Brasos, Municipality of Gonzales.*

This indenture, made this 15th day of November in the year of our Lord one thousand eight hundred and thirty-four, between Lewis D. Sowell, curator of the estate of William A. Sowell, deceased, as will appear by the records of the office of the Judge in the 1st instance, and John Sowell, Sr., of the same jurisdiction, of the other part, witnesseth: Whereas, on the 15th day of the month of November in the year of our Lord one thousand eight hundred and thirty-four, the aforesaid Lewis D. Sowell did expose to public sale by his authority as curator of the estate of William A. Sowell, deceased, one-quarter of a league of land, received to him, the said William A. Sowell, as a settler in the colony of Green De Witt; whereto he, the said William A. Sowell, obtained a deed from Jose Atonia Navarro, the Commissioner of the Government; (the before mentioned quarter of a league of land is known to be in Class 3 and No. 7 on the west bank of the Guadalupe river about 12 miles above the town of Gonzales;) and there at the sale above mentioned, the before mentioned John Sowell, Sr., became the purchaser, by having been the highest bidder for the said quarter of a league of land, for the sum of ninety-seven dollars, current money of the Mexican United States, and hath since paid the said purchase money to the said Lewis D. Sowell, curator of the said William A. Sowell, deceased, and the said John Sowell is now desirous of obtaining a title to the said quarter of a league of land in consequence thereof.

Now this indenture witnesseth, that for and in consideration of the premises, and of the sum of ninety-seven dollars, current money of the United Mexican States, to the said Lewis D. Sowell, curator of the estate of William A. Sowell, deceased, in hand paid, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, the said Lewis D. Sowell as aforesaid, hath granted bargained and sold,

and by these presents doth grant, bargain and sell, unto him, the said John Sowell, Sr., his heirs and assigns, the said quarter of a league of land, so as aforesaid, and all the appurtenances thereto belonging ; to have and to hold the said quarter of a league of land, with the appurtenances, unto the said John Sowell, Sr., his heirs and assigns forever.

In witness whereof the said Lewis D. Sowell, curator of the said William A. Sowell, deceased, aforesaid, hath hereunto set his hand, the day and year first herein before written.

LEWIS D. SOWELL (Rubric) Curator.

Signed and delivered before us,
> JOSEPH P. LALOR,
> BENJAMIN KELLOGG.

I certify that the foregoing deed was this day executed before me in accordance with the law.    To which I sign, with two assisting witnesses of my faith, this day of the date.

EZEKIEL WILLIAMS, Judge.

Assistant Witness                    Assistant Witness
JOSEPH P. LALOR,                      BENJAMIN KELLOGG.

It appeared by bill of exceptions that when the cause was under argument, the Court arrested the argument when the counsel was making comment on the validity of the defendants' chain of title, which purports to be records and proceedings of the curator of W. A. Sowell, deceased, here made a part of this bill of exceptions ; which remarks of counsel were to the following effect, to wit : that although the Court had admitted the exhibit to go to the jury, yet it was before them for just what it was worth, and that they, the jury, were to determine as to the validity and importance of said exhibit, and to regard it as they might see proper under their oaths and the law ; whereupon the Court arrested the argument of said counsel, and said that he had admitted said exhibit, together with the deed from said curator to John Sowell, Sr., as a complete title of itself ; and that it passed a complete title to said land to the purchaser, John Sowell ; and would not allow counsel to further comment on said title, although but few remarks had been made on that branch of the case ; to which remarks and ruling of the Court plaintiff excepts, &c.

The Court instructed the jury as follows :—

The deed introduced by defendants, from the curator of William A. Sowell's estate, together with the copy of the record

from the Probate office of Gonzales, conveying the land in controversy to John Sowell, I charge you is good and sufficient, and should be regarded by you as vesting the title of the William A. Sowell quarter in John Sowell.

The following instructions were asked by plaintiff's counsel, and refused:—

To support a sale of real property, made by a curator of a succession in 1834, the existence of debts against the deceased, and the authorization of the Judge, were necessary; and the curator had no power to sell without the existence of such debts, and without the authorization of the Judge.

The certified copy, purporting to be proceedings before the Judge of the first instance of the jurisdiction of Gonzales, in relation to the estate of William A. Sowell, and the deed by Lewis D. Sowell, curator, are not, within themselves, evidence of the right or authority of the curator to sell the land belonging to the estate or minor child of William A. Sowell.

According to the civil law in force in this country in 1834, the real estate inherited by a minor child from a father, could not be sold, unless such minor child had been represented by a tutor or guardian, and who must have been made a party to the proceedings ; and then only for the purpose of paying debts, or for the benefit of the minor.

Verdict and judgment for the plaintiff for an undivided eighth, in right of Rachel Sowell, as grandchild of John Sowell; and commissioners appointed to make partition. Appeal by plaintiff alone.

*I. A. & G. W. Paschal*, for appellant. The question is purely one of law. And the Spanish law, then in force, certainly prohibited the sale of the land of the heir, without proving the existence of debts and without the authorization of the Judge. It remains to be shown, that any subsequent ratification by the Judge would be valid; but if it would, there is no such ratification in the record; there being nothing except an acknowledgment of the deed before the Judge of first instance. (See 1 White's Recop., Book 1, Tit. 3, Cap. 1, § 2, vol. 1, page 13 ; L. 4, T. 5, P. 5 ; L. 14, Tit. 11, P. 4 ; L. 18, Tit. 6, P. 6.) And the notes of Johnson, to the Institutes, in his translation of Aso Manuel, elucidate the text. And so are all the Spanish authorities.

28

*J. Ireland,* also, for appellant.

*Mills,* for appellees.  As to the order of sale by the Judge of the first instance to the curator, we say, the judicial proceedings of the former Courts and tribunals of this country, under another jurisdiction from the present, are presumed correct and regular in all things; especially under a different system of laws. (Trepagnier v. Batter, 12 Mart. R. 534; Poor v. Boyce, 12 Tex. R. 440.)   Old probate sales cannot be annulled for the want of important parts in the record necessary to validate them; such as full power in the person acting; and this rule is founded as well in public policy as in principles of abstract justice. (Succession of Bowles, 3 Rob. 35; Gibson v. Foster, 2 An. 503; Gentile v. Foley, 3 Id. 146.)

It is matter of public history, which this Court can judicially notice, that the war of 1835 and 1836 produced the utmost confusion and disorder among the archives of the superior and inferior tribunals of this county, (especially, at the opening of the war, near the town of Gonzales,) the Alcaldes and the Ayuntamientos; and that the public records were removed from one place to another on an hour's warning, without much care for their preservation; and adding to this the notorious loose manner in which they were kept, arising from various causes, we say the absence of the order of sale in the Probate record, when applied to these ancient proceedings, raises but a remote presumption indeed, and one which must be held subordinate to the violent legal presumption that the Judge before whom the deed was afterwards acknowledged did his duty. (Gentile v. Foley, 3 An. 146; Gibson v. Foster, 2 Id. 503; Poor v. Boyce, 12 Tex. R. 451; Gregnon's Lessee v. Astor et al., 2 How. 243; Ball v. Ball, 15 La. 173; Succession of Wardsworth, 2 An. 966; Thebadeaux v. Thebadeaux, 5 Id. 598.)

But admitting the nullity of the sale, arising from a defective Probate record, (which we deny,) Swift, nor his administrator Baker, could avail themselves of it; the heir, and the heir alone, of Wm. A. Sowell could impeach the sale.* (Blanchard v. Maureau, 3 An. 128.)

Again, it is said there were no debts, and the curator's sale is a nullity for that reason; but, it must be remembered, a pur-

* This suit was, in fact, brought by the heir for the use of Swift.—REPS.

chaser at a Probate sale is not to look to the necessity of a sale. (La Caime v. Moreau, 13 La. 433; Graham v. Fogleman, 14 Id. 146; 15 Id. 182; 7 Rob. 66; 10 Id. 396; 11 Id. 67; McCullough v. Minor, 2 An. 468; Howard v. Bennett, 13 Tex. R. 309.)

WHEELER, J. The question upon this appeal is, whether the curator's sale and deed, of the 15th of November, 1834, was rightly held by the Court valid and effectual to pass and vest title in the purchaser. And we are of opinion that it was. It was executed before the Judge, and it therefore evidences his authorization and approval of the sale. It is to be deemed in the nature, in so far, of a judicial act, and affords *prima facie* evidence, at least, of the truth of the facts it recites. It affords all the proof that ought, at this day, to be required of the legality of the sale. Upon a similar question, the Supreme Court of Louisiana say, the ground taken, in opposition to the validity of a Probate sale, by the parties seeking to impeach it, "goes to charge the curator and the Court with a culpable neglect of duty, and it must be proved by them, though it involves a negative." (2 Ann. 508.) The objection the Court were considering was, that no attorney was appointed to represent absent heirs, as required by the Act of 1817, and no citation was issued before the judgment ordering the sale. The evidence was that of a subsequent Judge of the same Court, that he had searched the records, (in 1845,) and found no appointment of any attorney to represent the absent heirs, and no citation issued before the judgment ordering the sale of the property, (in 1825,) to any one purporting to be attorney of absent heirs. The Court held the evidence insufficient to invalidate the sale, observing that, "considering the time and the locality when and where these proceedings took place, the evidence alleged is not satisfactory, and probably would not be so in any case. It is well known that in the remote parishes of the State, for the want of suitable buildings and responsible keepers, proper care has not been taken of judicial records, that many are entirely lost, and that those which remain are often in an incomplete and dilapidated state. Much the greater part of the real property of the State is held under Probate or Sheriffs' sales; and if the validity of the titles thus acquired during the last forty years was to be tested by the judicial records as they may exist at any subsequent epoch, time, instead of healing, as it should, the defects of those titles, would

gradually weaken, and eventually destroy them." (Ib.) These observations apply with peculiar force to the condition of the early records and titles of this country, and especially in the locality of the proceedings in question in this case. It is not surprising that portions of the records of the proceedings of the judicial tribunals of that time and locality, especially, have been lost. The matter of surprise is, that any part of them should have been preserved from the devastation and ruin that overspread that particular locality after the fall of the Alamo ; when it was overrun by the semi-barbarous hordes of an enemy that discarded all the laws of civilized warfare, held nothing sacred which their Vandal hands could destroy or desecrate, and literally carried fire and the sword, an indiscriminate destruction and slaughter, in their march, as they swept over that part of the State, before any effective force could be concentrated to check their ravages. In respect to the acts and judicial proceedings of the authorities anterior to that time, under which rights have grown up and titles have been held and transmitted, we may well apply the rule adopted by the Supreme Court of Louisiana, and hold those who would invalidate them, on the ground that the records do not show a compliance by the officers with the requirements of the law in every particular, bound to prove that there was not, in fact, a compliance with the law, " though it involved a negative." (Ib.) The presumption in the present case is, that there was such compliance. The opposite supposition would impute to the curator and the Judge a culpable violation of duty. And the presumption of *omnia rite acta*, which attaches to judicial proceedings, is not to be rebutted by the remote presumption arising from the absence of record evidence of the order of sale and the necessity of such order, after so great a lapse of time. As was said in the case cited, " The defendant was not the keeper of the records, and is not bound to account for their loss. * * * We are bound to believe, against mere probabilities, that the Judge did his duty, and to presume, at this late period of time, that" all the prerequisites of the law were complied with when the Judge gave his sanction and authorization to the deed of conveyance. The absence of the order of sale in this case, as was said by the same Court in a later case, " when applied to these ancient proceedings, raises but a remote presumption, which we hold to be subordinate to the violent legal presumption that the Judge before whom the proceedings were had did his duty." (3 Ann. 147.) We have heretofore had occasion to notice with what indulgence the

Courts of other States have regarded the proceedings of their Courts of Probate, when it was proposed to annul titles fairly acquired under them, because their records did not show a compliance with all the requirements of the law in respect to the disposition of the estates of deceased persons. (Burdett v. Silsbee, and Dancy v. Stricklinge, 15 Tex. R.; Soye's Heirs v. Maverick, 18 Id.) Presumptions must be indulged in favor of those proceedings, especially when they are ancient, and titles have been acquired and transmitted under them, or it would indeed be true that time, instead of healing, as it should, the defects of these titles, would gradually undermine, and eventually destroy them. The judgment is affirmed.

Judgment affirmed.