**WIGGINS et al. v. HENSLEY et al.**
**No. 2742.**

Court of Civil Appeals of Texas. Beaumont. Nov. 12, 1935.

Rehearing Denied Jan. 15, 1936.

House, Wilson & House, of Dallas, Crawford & Crawford, of Conroe, A. D. Dyess and Joel Cook, both of Houston, and Fox Campbell, of Livingston, for appellants.

Fouts, Amerman & Moore, W. J. Howard, W. N. Bonner, C. M. Hightower, and Vinson, Elkins, Sweeton & Weems, all of Houston, Pitts & Liles, of Conroe, L. T. Wardlaw, of Fort Worth, and J. C. Wilhoit, of Houston, for appellees.

O'QUINN, Justice.

This was a suit in trespass to try title, originally instituted by Mrs. E. E. Hensley and the Gulf Coast Drilling & Production Company, as plaintiffs, against Joe Wiggins, Jr., Mrs. Ida Wiggins, his wife, Ben Wiggins, S. A. Crawford, T. W. Crawford, and H. C. Tyrrell, to recover 178 acres of land, more or less, in the Alphonso Steel one-third league survey in Montgomery county, Tex.

The defendants answered by general demurrer, general denial, plea of not guilty, the 10 years' statute of limitation (Vernon's Ann.Civ.St. art. 5510), and specially that J. A. Sloan, one of plaintiffs' predecessors in title, had made a verbal gift of the land in controversy to Ed Price, a predecessor of defendants in title, and that said Price accepted said gift of said land, took possession of same, and in reliance upon said gift had made substantial and permanent improvements upon the west one-half of said tract of which J. A. Sloan had claimed to be the record owner, and that, by reason of said parol gift, plaintiffs and

all successors in title of J. A. Sloan were estopped from denying the defendants' claim thereto.

The defendants also filed a cross-action in trespass to try title against all of the plaintiffs and prayed for damages for injuries done to the land and for oil removed from the land. Mrs. E. E. Hensley died, and her independent executor, Mrs. Marguerite H. Brading, and her husband, Burt E. Brading, together with all the heirs of Mrs. E. E. Hensley, were made parties plaintiff and cross-defendants. By amended pleadings numerous parties were made, both plaintiffs and cross-defendants.

The case was tried to a jury upon special issues, in answer to which they found: (a) Against appellants' plea of limitation; (b) that Sloan did not make a parol gift of the west one-half of the land in controversy to Ed Price, as asserted by appellants; (c) that Ed Price had not made valuable and permanent improvements on said land; (d) that Ed Price had recognized Sloan as the owner of the west one-half of the land in controversy (that being the part that appellants alleged had been given to Price by parol by Sloan); (e) that Price had at some time between 1917 and 1928 agreed to look after the west 89 acres of the land in controversy for J. A. Sloan. On the verdict of the jury, judgment was entered in favor of appellees for the land and against appellants. Motion for a new trial was overruled, and the case is before us for review.

The first assignment of error is: "The court erred in permitting plaintiffs to introduce in evidence, over the objection of defendants that same were void for uncertainty, and, therefore, inadmissible, deeds containing the following description, and none other, of the property involved in this suit, to-wit: also one hundred and seventy eight acres of the Alfonso Steel Headright bounded as follows: On the north by the original Lem Smith Survey including the northeast corner of said Alfonso Steel Headright Survey."

Before discussing this assignment, we will say that the Alphonso Steel one-third league survey in Montgomery county was patented to James Knight, assignee of Alphonso Steel, on January 16, 1847. On March 21, 1853, James Knight conveyed the entire survey to John McNeese and Ivy McNeese. May 5, 1869, Ivy Mc-

Neese, then owning more than 178 acres in said survey, conveyed to James E. Cole 178 acres of the Alphonso Steel survey, with this description: "Also one hundred and seventy eight acres of the Alfonso Steel Headright bounded as follows: On the North by the original Lem Smith survey including the northeast corner of said Alfonso Steel Headright survey."

January 29, 1870, James E. Cole conveyed the 178 acres to U. E. Hartman, describing same as "being in the northeast corner of the Alfonso Steel" survey. September 5, 1896, U. E. Hartman conveyed the 178 acres to Rebecca R. Green, describing same as being in the northeast corner of the Alphonso Steel headright, and referred to same as being the 178 acres conveyed to him by Cole, giving the book and page of the deed record where same appeared of record. October 10, 1896, Rebecca R. Green, joined by her husband, C. W. Green, conveyed 78 acres of the 178-acre tract to J. M. Hensley, describing the 178 acres as being in the northeast corner of the Alphonso Steel headright, referring to the record of the Cole deed. December 4, 1899, Mrs. Green, joined by her husband, conveyed the remaining 100 acres of the 178-acre tract to J. M. Hensley, describing the 178 acres as in the northeast corner of the Alphonso Steel headright, and referring to the record of the Cole deed. December 9, 1899, J. M. Hensley conveyed the timber on the 178 acres to the Conroe Lumber Company, describing the 178 acres as follows:

"One hundred and seventy-eight (178) acres of land out of the Alfonso Steel Headright of one-third of a league, lying and being situate in the State and County first aforesaid, being bounded as follows:

"Begin at the S. E. corner of said survey, a post from a pine 14 in. dia. mkd. B. brs. 89½ deg. W. 9 vs., a pinoak 6 in. dia. mkd. X brs. s. 10½ deg. W. 8 vs.;

"Thence N. 30 deg. W. with the E. line of said survey 1443.3 vs. to corner on the S. line of Lem Smith's survey, a post from which a pine 24 in. dia. mkd. B. brs. S. 40 deg. W. 8 vs.;

"Thence S. 60 deg. W. with Smith's South line 650 vs. set a stake in the same for corner;

"Thence S. 30 deg. E. 1295.3 vs. set a stake for corner;

"Thence S. 60 deg. W. 500 vs. set a stake for corner;

"Thence S. 30 deg. E. 148 vs. to the South boundary line of the said Steel Survey, set a stake in the same for corner;

"Thence N. 60 E. 1150 vs. with said South line to the place of beginning."

This instrument was acknowledged on December 9, 1899, and placed of record December 11, 1899. This was the first time, so far as we can ascertain from the record, when the 178-acre tract was described by full metes and bounds. In subsequent conveyances, the land was described by these field notes. By mesne conveyances, the record title was finally lodged in appellees, and is the land in controversy.

As shown by appellants' assignment above set out, it is contended that all the deeds describing the 178 acres as "one hundred and seventy eight acres of the Alfonso Steel Headright bounded as follows: On the north by the original Lem Smith including the northeast corner of said Alfonso Steel Headright survey" (deed Ivy McNeese to Cole), and 178 acres "being in the northeast corner of the Alfonso Steel Survey" (deed Cole to Hartman, and subsequent deeds containing same description, all in appellees' chain of title), were void for want of description, and that the court erred in admitting them in evidence.

We think that the description in the deed describing the land as 178 acres of the Alphonso Steel bounded on the north by the Lem Smith survey including the northeast corner of the Alphonso Steel survey, and the subsequent ones describing the 178 acres as being in the northeast corner of the Alphonso Steel survey, are in fact identical descriptions, for, if the tract was bounded on the north by the Lem Smith and included the northeast corner of the Steel, it must necessarily have included or called for a portion of the east line of the Steel. Then, as the north line of the Steel and the south line of the Smith are the same, the 178 acres would be between the north line and the east line of the Steel, and thus in the northeast corner, and, in the absence of a calling for the length of these lines, the land conveyed would be in the form of a square or rectangle, and so some portion of the land described in appellees' petition would fall within the square or rectangle, and was definitely and certainly contained in the description. Woods v. Selby Oil & Gas Co. (Tex.Civ.App.) 2 S.W.(2d) 895 [affirmed (Tex.Com.App.) 12 S.W.(2d) 994]. The deeds were not void, and the court did not err in admitting them in evidence. The assignment is overruled.

The second assignment is to the effect that, as the appellees claimed title to the land involved under two chains of title, one of which comes through the deeds containing the defective descriptions pointed out in the first assignment, and the other directly through the heirs of John and Ivy McNeese, it was error for the court to refuse appellants' motion for an instructed verdict for all of the land involved except that acquired by appellees by their deeds from the heirs of John and Ivy McNeese.

This assignment, in its effect, is but the first assignment differently presented. Its foundation is the alleged invalidity of the deed from John and Ivy McNeese to James E. Cole mentioned above, and that because of the description in that deed the title to the land did not pass to Cole, but remained in the heirs of John and Ivy McNeese. We have held that the deeds questioned by appellants were not void, but that, calling for 178 acres in the northeast corner of the Steel, under the decisions, the land would be located in the form of a square or rectangle. This would in any event embrace the major portion of the tract as shown by the field notes supra of the tract in controversy. The requested peremptory instruction was properly refused.

We come now to a discussion of the question of whether the judgment in favor of appellees for the specific tract described in their petition was proper. The one-third league Steel survey was in the form of a rectangle. It adjoined the Lem Smith two-thirds league on the south. It extended nearly east and west, and we shall speak of the tract as such. Its northeast and southeast corners are right angles. The north line of the Steel extended from the San Jacinto river on the west eastwardly along the south line of the Lem Smith two-thirds league survey, 5,783 varas to corner in the Smith; thence southwardly 1443.3 varas to corner; thence westwardly 5,733.8 varas to the San Jacinto river; thence with the meanders of the river northwardly to the place of beginning. There is no dispute as to the location of any of its lines or corners.

The following sketch illustrates the eastern end of the tract, and contains the land in controversy:

sold same to Rebecca R. Green, still describing it as in the northeast corner of the Steel. She conveyed it to J. M. Hen-

It cannot be said that the description in the Cole deed authorized the presumption that the land was to be taken in the shape shown in the sketch, but, as the Hensley timber deed of December 9, 1899, and subsequent deeds described the 178 acres by metes and bounds, may it not be presumed that these field notes had existed prior to the actual making of said deed, and that all parties owning an interest in the Steel tract had knowledge of the location of the 178 acres by these field notes at the time they were made on the ground, and acquiesced in same, and at all times later recognized same and raised no question about the location of the land? John McNeese and Ivy McNeese jointly owned the land after their purchase from James Knight in 1853. John McNeese was the father of Ivy McNeese. As before stated, on May 5, 1869, Ivy McNeese, then owning more than 178 acres in the Steel survey, conveyed the 178 acres in controversy to James E. Cole, who on January 29, 1870, conveyed same to U. E. Hartman, describing it as in the northeast corner of the Steel. Hartman was the son-in-law of Ivy McNeese. The land, the Steel survey, was thus in the hands of the McNeese family without partition other than by sales of different portions. Hartman held the 178 acres until September 5, 1896, when he

sley, who, on December 9, 1899, conveyed the timber on the 178 acres, describing the tract by the metes and bounds as claimed here by appellees, shown supra. The purchasers of the timber, the Conroe Lumber Company, took possession of the 178 acres, and removed the timber as per its purchase under these field notes. No objection was made by any of the co-owners of the Steel. We think it should be presumed that the co-owners of the Steel knew of the sale of the timber on the 178 acres under these field notes, and of the purchaser's taking possession of the land and cutting the timber, and that they, with full knowledge, acquiesced in same. This was the situation as to the 178 acres until January 29, 1913, when R. D. McDonald, who had acquired all of the Steel survey except the 178 acres, conveyed his entire interest in said survey to the Keystone Mills Company, and in his said conveyance excepted from same the 178 acres in controversy, referring to the Hensley timber deed of January 9, 1899, to the Conroe Lumber Company for description of the 178 acres excepted. The Hensley timber deed is the one describing the 178 acres by the field notes claimed herein by appellees. It thus appears that all of the owners of the Steel from the Cole deed down had recognized the location of the 178 acres and had nev-

er in any manner objected to same, especially as described in the Hensley timber deed of January 9, 1899, recognizing and accepting same as thus located, which must have been known to all of the co-owners of the Steel in their dealings with same, and especially recognized and accepted by R. D. McDonald, who owned all the rest of the Steel, in his conveyance to the Keystone Mills Company of his entire interest in the Steel, January 29, 1913, wherein he specifically excepted the 178 acres, referring to the Hensley deed for description of the 178 acres. So, the various deeds conveying the 178 acres, and the location of same out of the larger survey by the interested parties, the acquiescence in and recognition of said location by the then co-owners of the Steel, its subsequent conveyance by the field notes as given therein, the continued recognition by all parties of same as so located for more than 30 years, establish appellees' right and title to the land, and the judgment so decreeing was correct.

We think that the judgment awarding the land to appellees as described in their petition (Hensley field notes) shown by the sketch supra for another reason should be affirmed. The description in the Cole and several subsequent deeds as being in the northeast corner of the Steel, as we have held, did not render the deeds void for want of description, but that the land would be taken in the form of a square or rectangle in the northeast corner. If considered in this form, then it would contain the major portion of the 178 acres as located by the Hensley field notes, and so, in that event, appellees would still be cotenants of 178 acres of the Steel in controversy, and, if appellants were naked trespassers, appellees as cotenants would be entitled to recover the whole of the property in controversy.

Appellants asserted title to the land:

(a) By virtue of a parol gift of the land by J. A. Sloan to Ed Price, and deed from said Price to appellants. The question of gift was submitted to the jury, and they found that no such gift was ever made, and the record abundantly supports such finding.

(b) By the 10-year statute of limitation. It was contended that Ed Price, appellants' grantor, by virtue of the asserted gift from Sloan to him, in good faith relying upon such gift, took possession of the land and made good and valuable improvements thereon, and occupied, claimed, and used same for such period of time as to give title by limitation. The issues of improvements in good faith and of limitation were properly submitted to the jury, and they found against both, and these findings are fully supported by the record.

■ (c) Appellants also insisted that they were part owners of the land by virtue of purchases of the interest of certain of the McNeese heirs subsequently to the institution of the suit. These heirs were children of Blaney McNeese, a son of John McNeese, who with Ivy McNeese, another son, purchased the whole of the Steel survey from James Knight. John McNeese died April 27, 1853. He left a widow and seven children and the children of a deceased son, Blaney McNeese. In 1855 there was instituted in the district court of Washington county, Tex., a suit by Ivy McNeese and Edwin McNeese, two of the sons of John McNeese, deceased, against Elizabeth McNeese, the widow of John McNeese, and two other of the sons of John McNeese, in which it was alleged that the widow and the said two sons had conspired together to obtain from John McNeese during the weakness of his last illness certain lands and slaves. The other children of John McNeese and the children of his deceased son, Blaney McNeese, intervened in the suit, and the suit was converted into one for the settlement of the estate of John McNeese and its partition among his heirs. The parties for use in said cause made a certain agreement which was filed among the papers in the case September 24, 1856. This agreement stipulated that John McNeese in his lifetime had made certain advances to each of his children of real and personal property, showing the advances made to each. In this it appears that John McNeese gave to his son Edwin McNeese his "interest in mill tract in Montgomery county." The record shows that this "interest" was his (John McNeese's) portion (one-half) of the Steel survey. In the property inventoried and listed in the estate of John McNeese no land in the Steel appears. No claim to any interest in the Steel by John McNeese after his said gift to Edwin McNeese is shown, but later Edwin McNeese conveyed a one-half interest in the Steel survey as his own property, describing it as it was described in the said heirs' agreement as to advances made by John McNeese to his children. This deed by Ed-

win McNeese conveying one-half of the Steel was witnessed by Ivy McNeese, who owned the other one-half, and who, it must be presumed, knew all about the disposition his father had made of his one-half of the Steel in giving same to Edwin McNeese. No question of Edwin McNeese's right to convey this entire one-half of the Steel was ever made by any of the John McNeese heirs. The judgment in the Washington county suit completely disposed of the whole of the John McNeese estate, and awarded to each heir his full part of the same, which was accepted by all without question. No claim to any portion of the Steel survey was ever asserted afterwards by any of the McNeese heirs,. other than Ivy and Edwin and those claiming under them. The record discloses who the heirs of Ivy McNeese and Edwin McNeese were, and conclusively shows that appellants hold no interest by purchase from the heirs of either Ivy McNeese or Edwin McNeese, but from the heirs of Blaney McNeese, who is shown not to have at any time owned, held, or claimed any interest in said land. It thus appearing from the undisputed evidence, then appellants occupy the attitude of strangers to the title and naked trespassers on the land, and appellees, on the theory that they owned only the portion of the 178 acres that would be contained in a square in the northeast corner of the Steel, being tenants in common of the land in controversy, were entitled to judgment for the whole of the 178 acres.

Other assignments are presented and have been considered, and, none of them showing reversible error, all of them are overruled. The judgment should be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

 We have carefully considered appellants' motion for rehearing, and do not believe that same discloses any error in our original opinion. However, in addition to the reasons given in our original opinion holding that the judgment awarding to appellees the land described in their petition (Hensley field notes) was proper, we add the following: The undisputed facts show that Ivy McNeese and his father, John McNeese, bought the Alphonso Steel survey in Montgomery county, Tex., and owned same in undivided equal moieties. John McNeese gave his one-half of the survey to his son Edwin McNeese.

Ivy McNeese conveyed 178 acres of his one-half of the survey to James E. Cole in 1869. We have held that appellees have by mesne conveyances acquired this 178 acres, and are therefore the legal owners of same. Aside from this holding, it being shown by the undisputed evidence that Ivy McNeese left surviving him three children, Jeanette, Absley, and Mary, and that these were his only heirs, and that appellees had acquired deeds from the heirs of two of them, Jeanette and Absley, conveying whatever interest, if any, they had as heirs of Ivy McNeese in the land in controversy, therefore appellees are the owners of an undivided two-thirds interest in the 178 acres, and tenants in common with any other owners of the land, if any. This is admitted by appellants. Hence, it appearing that appellants had no title to the land, but were naked trespassers, appellees were entitled to recover of them the whole of the land in controversy.

Appellants' forty-ninth assignment in their motion for rehearing complains that "the court erred in holding that there were any instruments of record in the suit instituted in the district court in Washington County, Texas, in 1855, which show that the heirs of John McNeese and/or Ivy McNeese had parted with their title to the land in the Steel Survey, and in effect holding that the Mill tract in Montgomery County, Texas, was in part land in the Steel Survey, the evidence affirmatively showing that the Mill tract of land given by John McNeese to his son, Edwin McNeese, was in the Lemuel Smith Survey, and not in the Alphonso Steel."

We think appellants have inadvertently misstated the record. We have carefully rechecked the record, and failed to find any evidence to support the statement. The record without dispute shows that the land referred to as the "Mill tract" given by John McNeese to his son Edwin McNeese was John McNeese's one-half interest in the Alphonso Steel survey.

The motion for rehearing is overruled.

WALKER, Chief Justice, and COMBS, Justice.

We adopt the statement of the case made by Mr. Justice O'QUINN, both as to the pleadings and the facts, and concur in his legal conclusion that the deed from Ivy McNeese to James E. Cole dated May 5, 1869, was not void, but conveyed to

James E. Cole 178 acres of land, to be taken in the form of a square, out of the northeast corner of the Alphonso Steel headright survey.

Also, since the facts sustain the conclusion that, independent of their claim through and under the aforesaid deed from Ivy McNeese to James E. Cole, appellees, under other deeds, owned an undivided interest in the entire tract of land, as described in their petition, and that appellants owned no interest whatever in this land, we concur with Mr. Justice O'QUINN in the legal conclusions of his opinion on rehearing · that appellees, as tenants in common, rightfully recovered judgment against appellants for the entire tract of land sued for.

On the conclusions herein stated, the judgment of the lower court is in all things affirmed. The concurring opinion of Mr. Chief Justice WALKER, filed on original submission, is withdrawn.