### FROST et al. v. CROCKETT.

No. 10123.

Court of Civil Appeals of Texas. Galveston.

June 12, 1936.

On Rehearing July 29, 1937.

Rehearing Denied Oct. 14, 1937.

530

E. R. Campbell, Harry Holmes, and Gail Whitcomb, all of Houston, for appellants.

W. P. Hamblen and Phil D. Woodruff, both of Houston, for appellee.

PLEASANTS, Chief Justice.

This is a suit of trespass to try title brought by appellee against appellants to recover title and possession of a tract of 156 acres of land more or less described by metes and bounds, in the southern portion of lot 8 in the subdivision of the John D. Taylor league in Harris county. For convenience we will hereinafter designate the parties as they were in the trial court. The following sufficient further statement of the nature and result of the suit is copied from the brief of appellants:

"Defendants filed answers, pleading 'not guilty', and defendant, C. M. Frost, plead the Statutes of Limitation of three (3), five

(5) and ten (10) years [Vernon's Ann.Civ. St. arts. 5507, 5509, 5510]. Defendants, C. M. Frost, also filed a cross-action against plaintiff, seeking to recover said land, and in said cross-action alleged title to said land under the Statutes of Limitation of three (3) and ten (10) years [Vernon's Ann.Civ. St. arts. 5507, 5510].

"Plaintiff filed a supplemental petition, denying the allegations contained in the answers filed by defendants, and alleged that the title to the land involved herein was vested on March 4, 1923, in Mrs. M. C. Mateer, under whom plaintiff claims and holds, and that on said date said Mrs. M. C. Mateer died, and no administrator or executor was appointed or qualified within one year over the estate of said Mrs. M. C. Mateer, and, therefore, the law of limitations ceased to run for one year, immediately following March 4, 1923.

"The case was tried before a jury, and at the close of the evidence, defendant C. M. Frost asked for an instructed verdict, which was refused, and, in lieu thereof, the court peremptorily instructed the Jury to return a verdict for plaintiff, and against defendants on their cross-action, which was done, and judgment was rendered by the court on November 22, 1933, based upon said verdict, and defendants excepted and gave notice of appeal."

The appeal is prosecuted upon the following assignment of error presented in the brief of appellants:

"First Assignment

"The Court erred in rendering judgment for plaintiff, because the record shows that John D. Taylor, having conveyed the whole of the League to the estate of Charles S. Hudson, deceased, the curator, executor, or administrator of said estate was not shown to have been authorized to execute the deed reconveying the property to John D. Taylor, and, therefore, plaintiff has no title to the land in controversy.

"Second Assignment

"The Court erred in rendering judgment for plaintiff, because the record shows that the administrator of the estate of Eliza M. Hill was not authorized to execute the deed to S. L. S. Ballowe conveying lots eight (8) and nine (9) of the subdivision of the John D. Taylor League, because the administrator, prior to such sale and deed, had not qualified as administrator, and had not filed his oath and bond, all as required by Statute, and, therefore, plaintiff has no title to the land in controversy.

"Third Assignment

"The Court erred in rendering judgment in behalf of plaintiff, because the record shows that the deeds from Myra E. Spencer (formerly Smalley) to C. C. Morse, dated August 1, 1893, and the deed from E. C. Smalley to Myra E. Spencer, dated April 30, 1894, and the deed from M. E. Spencer to C. C. Morse, dated May 1, 1894, and the deed from E. C. Smalley to C. C. Morse, dated June 20, 1896, undertaking to convey 337 acres in the John D. Taylor League, devised to them by the will of their grandmother, Harriett George, through which deeds plaintiff claims, were void because of lack of description therein, it appearing that at the time of the death of Mrs. Harriett George, she owned of record much more land in the John D. Taylor League than 337 acres therein, and the deeds giving no description identifying said 337 acres, and, therefore, plaintiff has not the whole title to the land in controversy.

"Fourth Assignment

"The Court erred in rendering judgment in behalf of plaintiff, because the record shows that the deeds last above referred to only undertook to convey, as shown in the deeds, whatever rights the grantors therein had in said land which was bequeathed to them by their grandmother, Harriett George, by her last will and testament, which was probated and recorded, the record showing that said parties had acquired other interest therein, by the statute of descent and distribution, from William B. Canfield, Hannah P. Morse, Mary Elizabeth Smalley and Harriett George, and, therefore, plaintiff has not the whole title to the land in controversy, and it must be presumed that defendant, C. M. Frost, has acquired such other interest by reason of his present and prior possession of the land.

"Fifth Assignment

"The Court erred in rendering judgment in behalf of plaintiff, because the evidence shows that the plaintiff has not acquired the interest of Ennis C. Smalley, and/or the interest of Elmyra E. Smalley, grandchildren of Harriett George, and/or the interest of the heirs of Charles S. Hudson, and/or the interest of the heirs of Eliza M. Hill, in the land in controversy, and that defendant C. M. Frost, now holds such interest in the land through a presumed deed

from said parties, or their assigns, by reason of his present and prior possession of said land, and, therefore, plaintiff has not the whole title to said land, but the defendant, C. M. Frost, has the whole of it or an interest therein.

## "Sixth Assignment

"The Court erred in peremptorily instructing the Jury to return a verdict in behalf of plaintiff, because the evidence raises the issue, which should have been submitted to the Jury, whether defendants, and those under whom they hold, have matured a title to the land in controversy, under the Statutes of Limitation of ten (10) years, which was not submitted by the Court.

## "Seventh Assignment

"The Court erred in peremptorily instructing the Jury to bring in a verdict for plaintiff, on the theory that the deed from O. L. Hubbard to Walker broke, interrupted and terminated the limitation and adverse possession claimed by Tobe Caldwell, and those claiming through him, because Tobe Caldwell being in adverse possession of said land in controversy, conveyed the same to Hubbard with the agreement that he should clear up said title by judgment, or otherwise, for the title thereto, and that Hubbard would hold the title in trust for himself and Caldwell, and that Caldwell should continue the adverse possession thereof for the use of himself and Hubbard and his assigns, and that whatever recovery may be had, one-half thereof shall be for the use and benefit of Tobe Caldwell and the other one-half for himself and whomsoever he may have employed or assigned; and, in order to finance such litigation O. L. Hubbard made a deed to J. W. Walker describing said land, retaining the vendor's lien and superior title to secure the payment of two vendor's lien notes, aggregating practically the whole of the purported purchase price, Tobe Caldwell still remaining in adverse possession, claiming the land under the agreement aforesaid, and within one year J. W. Walker reconveyed to O. L. Hubbard, in consideration of the cancellation and redelivery to J. W. Walker of the notes executed by him to O. L. Hubbard, such deed from O. L. Hubbard to J. W. Walker did not break, interrupt or terminate the limitation and adverse possession claimed by said Tobe Caldwell, or his heirs, for the benefit of themselves and the said O. L. Hubbard, and his assigns, and O. L. Hubbard retained the superior title to said land, under the deed to J. W. Walker, as Trustee, and the actual

possession by Tobe Caldwell and his heirs gave notice, and all persons were charged with notice and inquiry, of their rights and claims, and the issue of limitation should have been submitted to the Jury.

## "Eighth Assignment

"The Court erred in refusing the request of defendants, after they had withdrawn their announcement of closing their testimony, to introduce as their witness, J. W. Walker, who was then in Court, ready to testify, and who would have testified, had he been permitted, that he accepted the deed from O. L. Hubbard to himself, under an agreement that he would and did hold the title to said land as Trustee for, and in trust for the heirs of Tobe Caldwell, Sr., and said O. L. Hubbard, and himself, and such lawyers as may have been employed, or might be employed, for the purpose of bringing suit to clear up the title to Tobe Caldwell, and his heirs, to the property in controversy, the testimony being offered after defendants' great surprise at the intimation made by the Court that said deed from O. L. Hubbard to J. W. Walker had the effect of terminating and breaking the limitation and adverse possession claimed by Tobe Caldwell, and those claiming under him, said further testimony being offered for the purpose, as stated, in rebuttal to, and in explanation of, the deed of O. L. Hubbard to J. W. Walker, which had theretofore been introduced in evidence by plaintiff, and in rebuttal to, and to overcome, the intimation by the Court, made after closing, that he might hold that said deed broke and overcame defendants' claim of limitation, because the evidence would not have materially delayed the trial and no prejudice to plaintiff would have resulted, and such refusal by the Court was an abuse of its sound discretion, and the additional testimony offered should have been admitted."

■ The record discloses that no assignments were filed in the court below. That useless procedure is no longer required since the amendment of article 1844, passed in 1931 by the 42d Legislature, chapter 75, § 1 (Vernon's Ann.Civ.St. art. 1844).

Under that amendment any assignment or proposition presented in appellants' brief which sufficiently shows the error complained of, and is followed by a sufficient statement from the record showing such error, must be considered by the appellate court. Heatley v. Ponder & Sons (Tex. Civ.App.) 40 S.W.(2d) 951; Security Union Ins. Co. v. Reed (Tex.Civ.App.) 42

S.W.(2d) 494; Pelton v. Allen Inv. Co. (Tex.Civ.App.) 78 S.W.(2d) 272, 273.

We deem it unnecessary to discuss in detail all of the propositions presented in appellants' brief.

The statement under appellants' first assignment is so general in its references to the statement of facts that it would require us to go through a voluminous statement of facts in order to determine what the evidence is upon the issue raised by the assignment. We are not required, and must decline, to do this. If this conclusion is not sound, we think the assignment should be overruled for the further reason that after this lapse of time, approximately 100 years, it will be presumed in support of such ancient deed that everything to protect the sale was properly done, there being nothing in the record to impeach such presumption. Baker v. Coe, 20 Tex. 429; Pendleton v. Shaw, 18 Tex.Civ.App. 439, 44 S.W. 1002.

The statement under the second proposition is clear and succinct and refers to the pages of the statement of facts where the evidence supporting the statement is found. The record affirmatively shows that the administrator was ordered to make the sale of the land before he had qualified by filing the oath and bond required by the statute. The authorities fully sustain appellants' contention that an administrator has no authority to act as such until he has taken the oath and filed the bond required of him by the statute, and further hold, in effect, that the court has no jurisdiction or authority to order a sale of property by an administrator who has not qualified as such by taking the oath and giving the bond, and returning an inventory of the estate as required by the statute. Gray v. McCurdy, 114 Tex. 217, 266 S.W. 396, 399, 36 A.L.R. 820; Altgelt v. Alamo National Bank, 98 Tex. 252, 83 S.W. 6, 11; Tucker v. Murphy, 66 Tex. 355, 1 S.W. 76; White v. Jones, 67 Tex. 638, 4 S.W. 161.

It is no answer to these authorities to quote from the opinion in the case of Pendleton v. Shaw, 18 Tex.Civ.App. 439, 44 S.W. 1002, 1010, the statement that "all reasonable presumptions will be indulged in favor of these ancient deeds, that everything necessary to be done to perfect the sale was properly done, if nothing appears to impeach its fairness." Neither does the case of Baker v. Coe, 20 Tex. 429, cited by plaintiff, answer defendants' proposi-

tion. These cases obviously are only speaking with reference to the method pursued in conducting the sale, and can have no force upon the question of the jurisdiction of the court to order the sale, or the authority of the administrator to make it.

In the case of McNally v. Haynes, 59 Tex. 583, 585, in which the validity of the sale was questioned on the ground that the administrator had not qualified as required by the statute at the time the sale was made, the record in the case showing that the administrator had not qualified by taking the oath and making the bond required by the statute until long after he made the sale, it is held that the regularity of the sale will not be presumed against the record. The court in that case says: "Any other doctrine would result in overcoming the record by presumption, or rather indulging in presumption against the record which would have no foundation in reason of law."

There is no showing that the record in the probate court in which the sale was ordered has been lost or destroyed. The whole of the proceedings were offered in evidence by plaintiff, and the record so put in evidence shows that the administrator did not qualify as required by the statute for more than a year after he had sold the land.

It seems clear to us that under this state of the record appellants' second proposition must be sustained. We think the rule of law announced by our Supreme Court in the case of McNally v. Haynes, supra, is applicable to the question here presented.

We agree with defendants that the fourth and fifth assignments and the proposition submitted thereunder raise questions of fact upon which the evidence was conflicting, and plaintiff was not entitled to an instructed verdict in her favor for all of the land involved in the suit. The proposition that prior possession of land by a defendant claiming ownership thereof will defeat the claim of a plaintiff who enters thereon with no title to the land is well settled by the decisions of our courts. House v. Reavis, 89 Tex. 626, 35 S.W. 1063; Duren v. Strong, 53 Tex. 379; Caplen v. Drew, 54 Tex. 493; Parker v. Fort Worth Ry. Co., 71 Tex. 132, 133, 8 S.W. 541; Burt v. Panjaud, 99 U.S. 180, 25 L.Ed. 451; Saxton v. Corbett (Tex.Civ. App.) 122 S.W. 75; Adels v. Joseph (Tex. Civ.App.) 148 S.W. 1154.

We also think that the evidence raised the issue of title in defendants by limitation of 10 years to all of the land, and the failure of the court to submit this issue to the jury was error, as complained of by the sixth assignment and the propositions thereunder.

The seventh assignment and propositions thereunder, which complain of the holding of the trial court that the running of the statute of limitation in favor of defendants was interrupted by the deed from Hubbard to Walker, must also be sustained.

There is testimony in the case to the effect that Tobe Caldwell, under whom defendants claim, went upon the land in controversy more than 12 years before this suit was filed, ascertained its boundaries, designated and marked its lines and corners on the ground (which old marks were found by the surveyor Gillespie in 1929), fenced and improved a part of it upon which he established his home with the proclaimed intention of "homesteading" the land, by perfecting title by limitation to the identical tract of land involved in this suit. Since the death of Tobe Caldwell, the land has been held by those claiming through and under him. As we have before stated, this testimony clearly raised the issue of title by limitation of 10 years in the defendants.

The evidence further shows that the land was conveyed by Tobe Caldwell to O. L. Hubbard under an agreement that Hubbard would by suit or otherwise clear title to the land and would hold the title conveyed by the deed for Caldwell and himself; that Caldwell would continue to hold possession of the land for himself and Hubbard and assignees, and the land, when the title was cleared, would belong one-half to Hubbard and one-half to Caldwell; that the deed from Hubbard to Walker was executed for the purpose of obtaining funds to pay the costs of the litigation that might become necessary in clearing title. The recited consideration for this deed was $5,150; $75 in cash and the balance by two vendor's lien notes executed by Walker and secured by a vendor's lien reserved in the deed. Caldwell remained in possession of the land, claiming it under his agreement with Hubbard. Within a year after the conveyance from Hubbard to him, the land was reconveyed by Walker to Hubbard for the recited consideration of the cancellation and delivery to Walker of the two notes given by him

as consideration for the deed to him by Caldwell. The land was reconveyed by Walker to Hubbard on September 8, 1927, and thereafter, on October 15, 1927, in furtherance of his agreement with Tobe Caldwell, Hubbard conveyed the land to Gavin Ulmer, who took and held the title under the trust agreement under which it was conveyed by Caldwell to Hubbard.

It seems clear to us that under the facts stated the conveyance did not interrupt the running of the statute of limitation in favor of Tobe Caldwell and those claiming under him. Davidson v. Green, 27 Tex.Civ.App. 394, 65 S.W. 1110; Thomson v. Weisman, 98 Tex. 170, 82 S.W. 503.

While Walker did not testify on the trial, we think the evidence before set out is amply sufficient to sustain a finding that Walker took and held the title to the land conveyed to him by Hubbard under the trust agreement under which it was conveyed to Hubbard by Tobe Caldwell.

But, if there was no such evidence in the record, the possession of the land by Tobe Caldwell, Jr., the son and heir of Old Tobe who died a few months after he conveyed the land to Hubbard, put Walker upon notice of the right of Tobe Caldwell, Jr., in the land, and he could not take title from Hubbard free of the trust imposed upon the title by the deed from Caldwell to Hubbard.

Such possession was continued in the defendants and those under whom they claim up to the time of the trial of the court below.

Upon these facts the ruling of the trial court in refusing to permit the defendants to delay the trial by reopening the case and placing Walker on the stand to prove by him that he took the deed from Hubbard to the land charged with the trust under which it was held by Hubbard, if error, could not have materially affected defendants. We are therefore relieved of the necessity of further discussing defendants' eighth assignment which complains of the refusal of the court to permit defendants to reopen the case and place Walker upon the stand to testify to the fact that he took the deed charged with the trust before stated.

For the errors pointed out in what we have above written, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.

GRAVES, J., not sitting.

## On Motion for Rehearing.

GRAVES, Justice.

The judgment of June 11 of 1936, reversing and remanding this cause, through an opinion filed the next day by Chief Justice PLEASANTS, was rendered without the participation of this member, who did not sit; thereafter motions for rehearing by both sides therein were filed and orally argued before the full court as then constituted, which was prior to the accession of Associate Justice CODY; still later, that is, on June 24 of 1937, after Justice CODY'S service had begun and at his request, counsel for both sides accommodatingly reargued the motions before the present court, all members sitting.

After such mature consideration, the court now determines that the former reversal cannot be adhered to, nor the full opinion then handed down indorsed, but that the appellee's motion for rehearing should be granted and the trial court's judgment in her favor affirmed, in the main upon these controlling considerations:

(1) The statement in the former opinion down to and inclusive of its overruling of appellants' first assignment of error is acquiesced in, with the exception that it is now concluded that appellants' third assignment should have been considered under amended R.S. art. 1844 (Vernon's Ann.Civ.St. art. 1844), none of the further holdings being adopted.

(2) Neither is it agreed that the defects in the record-showing as to authority in the administrator of Eliza M. Hill to execute the deed to S. L. S. Ballowe, under which the appellee claims title to the land in question, can be considered fatal at this late date. The application to make the sale was filed April 1, 1856, the order of sale was made April 2, 1856, the report of sale was filed August 27, 1856, the confirmation was made on the same day. Appellee introduced in evidence the oath and bond of the administrator filed and approved in December, 1857. While the doctrine of stale demand is not applied in the Texas courts, and would not be applicable in this instance if it were, because appellants do not connect themselves with the interest of Eliza Hill, yet our courts do hold: "All reasonable presumptions will be indulged in favor of these ancient deeds that everything necessary to be done to perfect the sale was properly done if nothing appears to impeach its fairness. Pendleton v. Shaw, 18 Tex.Civ.App. 439, 44 S.W. 1002; see, also, Baker v. Coe, 20 Tex. 429."

It is not pretended that the consideration given the administrator was not a fair and adequate one. In Rindge v. Oliphint, 62 Tex. 682, the court said:

"There was evidence tending to show that Frances Oliphint had never qualified as administratrix of the estate. Letters of administration, it appears, were duly issued to her, and the evidence indicates that she acted and was recognized by the probate court as the duly authorized administratrix of the estate, and the defendants in their pleadings allege that the estate is still open and that she is the administratrix. Her authority cannot be collaterally called in question concerning acts done by her under such circumstances. Poor v. Boyce, 12 Tex. 440, 449.

"The purchaser is not required to go behind the order of probate sale to see that the administrator has been duly appointed and continued, and that the proceedings have all been regular. Dancy v. Stricklinge, 15 Tex. 557, [65 Am.Dec. 179]; Bartlett's Heirs v. Cocke, 15 Tex. 471, 478; Poor v. Boyce, supra; and see Peterson v. Lowry, 48 Tex. 408."

After so great a lapse of time it would be impossible to supply the evidence necessary to cure such defects. But that such evidence once existed is hardly to be questioned, for those to whose interest it would have been to assert an invalidity in the proceedings can hardly be supposed to have foreborne doing so, unless they were aware that there was evidence showing the sale to be valid. Certainly in a collateral proceeding, after so great a lapse of time, it would at least require strong affirmative proof that the judicial sale was not one in fact. Here the evidence relied on is negative, that the administrator— the husband of the deceased—acting under orders of the court, had not qualified. The presumption is rather the other way, that there had been an earlier oath and bond filed in the case.

(3) The appellee—claiming the 156 acres immediately under Mrs. M. C. Mateer, who died March 4 of 1923, over whose estate no administrator nor executor had been appointed or qualified within one

year—relied upon the record title from the sovereignty of the soil down through Mrs. Mateer and into herself, while the appellants sought to establish as their defense adverse possession of it under the 10-year statute of limitation (Vernon's Ann.Civ.St. art. 5510).

(4) It seems clear from the evidence as a whole that appellee established this claimed record title in herself, either to the whole of the tract, or at least to a seven-eighths interest therein; while, on the other hand, the appellants wholly failed to show in the facts that they had any record title to any part of the land, or were in any way connected with any such a title, but were as a matter of fact asserting title in themselves by virtue of the statute of 10 years' limitation, based upon a claimed possession of it for that long by old Tobe Caldwell and his heirs, which possession—claimed as having been prior—they further asserted gave rise to a presumption of law in their favor that they had acquired an alleged outstanding title in a part of the land that did not go into the appellee's relied upon chain.

(5) The appellants, thus having no other title of any sort, as a matter of fact, never succeeded either in maturing any actual title by virtue of their claimed possession under old Tobe Caldwell, but always remained in the status or category of being mere claimants to a title by limitation under that possession, hence, as against the established record title of the appellee, which, subject to their first two assignments that have been overruled, they admit amounts to an undivided three-eighths interest in the 156 acres, were strangers, or naked trespassers, only.

(6) If, as held supra, the objections made to appellee's record title as a whole are unsound, and if it further affirmatively appeared that the appellants, on their side, had no title to any part of the land of any sort that was not referable to their claimed possession down under old Tobe Caldwell only, as has also just been determined, then it follows from well-settled authorities that, as the admitted holder of an undivided three-eighths interest in it, the appellee was entitled to recover the whole of the land against them. Croft v. Rains, 10 Tex. 520, 523; Presley v. Holmes, 33 Tex. 476; Alexander v. Gilliam, 39 Tex. 227, 228; Hutchins v. Bacon, 46 Tex. 408; Ney v. Mumme, 66 Tex. 268, 17 S.W. 407; Pilcher v. Kirk, 60 Tex. 162; Padgett v. Guilmartin, 106 Tex. 551, 172 S.W. 1101; Telfener v. Dillard, 70 Tex. 139, 7 S.W. 847; Taylor v. Higgins Oil & Fuel Co. (Tex.Civ.App.) 2 S.W.(2d) 288; Plowman v. Miller (Tex.Civ.App.) 27 S.W.(2d) 612; Duncanson v. Howell (Tex.Com.App.) 222 S.W. 232.

(7) Irrespective of where the burden lay upon that feature, which this court does not think was upon the appellee, the appellants' own pleadings and proof—beginning with old Tobe Caldwell's affidavit to having entered upon this land with the objective of "homesteading" it by limitation—conclusively if not undisputedly showed that their sole claim to any title was under the 10-year statute of limitation, based alone upon the occupancy of that old negro and his descendants; this appears most directly from the testimony of J. M. Frost, Jr., brother of appellant C. M. Frost, who said he had made all the investigations for his brother with reference to the claims of all these negroes to title to this land by limitation, and that he knew the appellee owned and had record title to it, having himself approached her about leasing it; the appellant himself testified to having tried to buy the property from every one who was claiming it, except the appellee, putting all of the instruments in evidence upon this trial which he had so obtained affecting it, none of which, however, emanated from sources other than the same possession under Tobe Caldwell.

(8) These developed facts clearly differentiate this case from those cited by the appellants as giving rise to a presumption of title from prior possession—that is, instances where a prior possession is either unexplained, or grounded upon some right or interest not inconsistent with such a presumption; in other words, there was in this instance a complete explanation and disclosure of just what the possession here depended upon was, to wit, nothing but the naked occupancy of old Tobe Caldwell that never ripened into any title at all. Wiggins v. Hensley (Tex.Civ.App.) 90 S. W.(2d) 572; Lynn v. Burnett, 34 Tex.Civ. App. 335, 79 S.W. 64; Robertson v. Kirby, 25 Tex.Civ.App. 472, 61 S.W. 967, where the rule is thus stated:

"The question of law to be determined then, is, was the presumption of title arising from prior possession rebutted by the facts above stated? The learned district judge held that it was, and we are con-

strained to adopt the same view. The case is distinguishable, we think, from House v. Reavis, 89 Tex. 626, 35 S.W. 1063, Watkins v. Smith, 91 Tex. 589, 45 S.W. 560, and that line of cases, and seems more analogous to Bates v. Bacon, 66 Tex. 348, 1 S.W. 256. * * * Since the title under which possession was taken by the grantor of plaintiff in error was fully exhibited, and was affirmatively shown, as found by the jury, not to be a title to the land in controversy, the evidence of title which possession unexplained affords was rebutted, and no presumption arose that 'an independent outstanding title' had been acquired." See, also, McCarthy v. Houston Oil Co. (Tex.Civ.App.) 221 S.W. 307, and Houston Oil Co. v. McCarthy (Tex.Com.App.) 245 S.W. 651; Butler v. Borroum (Tex.Civ.App.) 218 S.W. 1115, and Bates v. Bacon, 66 Tex. 348, 1 S.W. 256.

 For the reason already given—none of the objections against the appellee's record title as an entirety being good—in view of the indisputable fact that she showed herself to be such owner of a large undivided interest in the land, conceded by appellants, in the stated contingency, to be as much as three-eighths thereof, while they themselves were strangers to any interest, it is deemed unnecessary to further construe or interpret the several deeds from grandchildren of Harriett George to C. C. Morse, which constitute the subject-matter of their third assignment of error, as copied in this court's former opinion, than to hold them not void for want of description of the interests undertaken to be conveyed, but rather to have apparently been intended to convey all their respective interests in the 337 acres therein referred to, especially as the evidence in that connection showed they had always subsequently recognized such full interests to be in their grantee.

 (9) The learned trial court was correct in holding—presumptively, at any rate—that the deeds from Hubbard to Walker, and from Walker back to Hubbard, broke the limitation and adverse claim by Tobe Caldwell and those so holding under him, but learned counsel for appellants is mistaken in asserting the record to further show that the trial judge did not also consider the prior deed of Caldwell to Hubbard likewise as constituting such a break; counsel in his final written reply to appellee's arguments cred-

its the trial judge with "suggesting that, because of the agreement between Caldwell and Hubbard, at the time of the deed, such deed did not constitute a break of adverse possession"; the bill of exceptions fails to disclose such a holding as to this prior deed, or the giving of the quoted reason therefor by the court; wherefore, it must still be presumed upon the appeal, if that be necessary in support of the judgment rendered below, that the trial court considered both of the deeds referred to as alike constituting breaks in the Tobe Caldwell possession; in any event, this court so considers them supporting that view by the citation of such authorities as these: Cocke v. Texas & N. O. Railway Co., 46 Tex.Civ.App. 363, 103 S.W. 407; Daugherty v. Manning (Tex.Civ.App.) 221 S.W. 983 (writ of error dismissed for want of jurisdiction); Gibbs v. Lester (Tex.Civ.App.) 24 S.W.(2d) 527, and Id. (Tex.Com.App.) 41 S.W.(2d) 28, 80 A.L. R. 431.

[16] Furthermore, since these two deeds were absolute in terms upon their faces, the parol testimony offered by appellants, through one of their number, of a conversation had between himself and Hubbard, the grantee in such deed from Tobe Caldwell, to the effect that Hubbard was to hold the title to the land thereby conveyed to him by Caldwell as trustee for both themselves and another, and which the trial court specifically admitted tentatively only, subject to appellee's objections, was clearly banned by her specifications then made that the conversation was both pure hearsay and a self-serving declaration seeking to impose a parol trust upon a deed absolute on its face, as between the parties themselves claiming thereunder. Butler v. Duffey (Tex.Civ.App.) 288 S.W. 598, 599.

 It seems to be mutually conceded by both parties that, if either of the deeds just referred to interrupted the possession under the limitation claim, no title thereunder matured, hence that feature need not be discussed; this court is further convinced, however, that in another essential respect the limitation claim under Tobe Caldwell's possession could never have matured a title, and that is the conclusive, if not indisputable showing, that the old negro entered upon this land as the tenant of Mr. Ben Reisner, under the belief of both of them that it constituted Mr. Reisner's own property; that neither of them

discovered the contrary until the surveyor, Gillespie, demonstrated to them in February of 1924 that the land on which old Tobe had lived up to that time under such mistaken belief in fact did not belong to Mr. Reisner, but to the mother of the appellee herein; wherefore, under such indisputable showing from the evidence herein, considered as an entirety, Tobe Caldwell's possession—especially under his own declarations to Mr. Reisner and many others—never became, until after the date of that survey, if ever, in any sense adverse to the claim of appellee's predecessor in title.

Further discussion being deemed unnecessary, it is held that none of appellants' assignments should be sustained, that the appellee's motion for rehearing should be granted, the former reversal set aside, and the judgment of the trial court affirmed; it will be so ordered.

Rehearing granted, reversal set aside, trial-court's judgment affirmed, Chief Justice PLEASANTS dissenting.

PLEASANTS, Chief Justice (dissenting).

I adhere to the views expressed in the original opinion in this case, and for the reasons therein I respectfully dissent from the opinion of the majority of this court setting aside the former order of reversal and affirming the judgment of the trial court.